PICKETT, Judge.
This is an action for personal injuries and medical expenses brought by Mr. and Mrs. Emanuel Hunt arising out of Mrs. Hunt’s accidental fall from a hospital bed of the defendant, Bogalusa Community Medical Center (Medical Center). The petition, also, named St. Paul Fire and Marine Insurance Company, the Medical Center’s liability insurer, as a defendant.
The trial court found for the plaintiffs, awarding Mrs. Hunt the sum of $10,000.00 for pain and suffering associated with her fractured hip and awarding Mr. Hunt the sum of $1,621.41 for his medical expenses. The defendants have appealed, contending that the trial court erred in finding liability on the part of the Medical Center.
The central issue at the trial and, also, on this appeal is whether the hospital bed was adequately equipped with guard rails, considering Mrs. Hunt’s condition and the standard of care existing in the community at the time of this accident. We quote the pertinent portions of the trial court’s Reasons for Judgment.
“Mrs. Hunt was hospitalized in the Bo-galusa Community Medical Center and on September 10, 1969, she underwent surgery for the removal of her gall bladder. While recovering from the operation early in the morning on September 13, 1969, Mrs. Hunt fell from her bed and sustained a broken hip. The main issue to be decided in this case is whether or not the hospital had guard rails on the hospital bed in which Mrs. Hunt was recovering. The administrators of two neighboring hospitals testified that their hospitals had a policy about guard rails being on the beds, especially all patients who are under postoperative care, and all patients over sixty-five, which policy would cover Mrs. Hunt in both instances. From their testimony it was determined that there are generally two types of rails installed on these beds, full length rails and partial rails. While there is a dispute as to type of rails that was installed on the particular bed in question the Court finds that upon the evidence that this bed was equipped with two partial rails. .
“. . . The Court realizes that the hospital cannot provide continuous nursing care for every patient in the hospital and even where a patient has a special duty nurse to provide continuous nursing services, that it is still possible for a patient to roll out of the bed while under sedation or very seriously ill. Clearly the hospital has a duty to provide some sort of protection to the patient and they have recognized this duty by establishing guard rails for those patients under post-operative care and over sixty-five years of age. In this case the Court finds that the hospital had only two partial rails on the particular bed in question. Whether or not these partial rails were up at the time Mrs. Hunt fell from the bed is not clear from the testimony. However, the Court takes note of the fact that the hospital later on after Mrs. Hunt fell out of the bed, installed two additional rails to protect this lady. The Court finds that two partial rails are not sufficient protection for a patient under post-operative care and over sixty-five years of age. The Court believes that even if two partial rails were up that a restless patient rolling round on the bed, could roll over and fall out of the bed very easily unless some protection was provided for the feet to keep them up on the bed. To leave the feet and legs unprotected will allow the patient to simply roll out of the bed as soon as her feet and legs got off of the side of the bed. The Court believes that Mrs. Hunt would have fell (sic) out of the bed whether or not the rails were up or not.”
The trial court based the finding that only two partial rails were on the bed on *221 his disbelief of the testimony of the Medical Center’s nurses and of the private nurse hired by the Hunts, who was on duty, but out of the room at the time, that the bed had full rails. The court, rather, believed the testimony of Mrs. Hunt’s friends and relatives, who had visited her prior to the accident, that there were only the two partial rails on either side of the head of the bed extending about half way along the sides.
We are not in a position to dispute this finding based on witness credibility and we accept it as fact. However, the defendants-appellants strongly urge that this practice of having partial rails was standard in the community at the time and thus no negligence has been shown on the part of the Medical Center. We agree that the testimony of the hospital administrators in neighboring communities and of Mrs. Hunt’s attending physician supports this contention and we find that the trial court erred in holding the Medical Center to a higher standard, or in holding that the established standard was too low.
Dr. Edgar L. Feinberg, Mrs. Hunt’s attending physician, testified by deposition. Following the operation on September 10, 1969, he saw Mrs. Hunt in her room twice a day, his usual routine. He stated that her progress was as good as could be expected and was not unusual. She was receiving medication for nausea and pain. He stated that the equipment provided by the Medical Center, including the standard hospital bed, was normal, usual and adequate for Mrs. Hunt’s care. He had no reason to recommend or direct that additional precautions be taken.
Mr. Don Varnado testified as the administrator of the Riverside Medical Center in Franklinton, located about twenty miles from Bogalusa. He stated that his institution’s present policy with regard to bed rails was that full length rails must be used for all elderly, post-operative patients under sedation. But he stated that this policy had been in effect for only three years. (The date of the trial was November 27, 1972, more than three years after Mrs. Hunt’s fall.) Mr. Varnado described the use of rails as a form of restraint but not comparable to a strap. Patients may and do fall from their beds even with guard rails up. When asked whether he thought a rail extending from the head of the bed down to the middle or over halfway would restrain a person from rolling out, he responded that he thought it would. But he said the reason for the change of policy from half-rails to full length rails at Riverside was because it was felt that the latter would be more effective. Prior to the change in 1969, his hospital used beds with two short rails on them exclusively.
Mr. Halleo Alexius, the administrator of the St. Tammany Parish Hospital, testified as an expert in the field of hospital administration. With respect to the crucial issue of guard rails, he testified that a rail longer than a half-rail has possibly a little better protection against falling out of bed, but not by any appreciable amount. In his opinion, either type would prevent a person from simply rolling out of bed and that some conscious or voluntary action by the patient would be necessary to get over either type of rail. He stated that his hospital used three-quarter length rails and he saw little significant difference in the effectiveness of the various lengths; there were conflicting schools of thought on the subject.
Mr. Cecil W. Ellvery testified as the administrator of the defendant Medical Center. His testimony with respect to the reasons and effectiveness of guard rails was generally the same as that of Mr. Alexius. He added that the decision to use full length rails would usually be made by the attending physician or sometimes by the charge nurse if she felt it was necessary.
On the basis of all of this testimony, we find that the use of the two partial rails on Mrs. Hunt’s bed in September of 1969 was in accordance with, rather than a deviation from, the standard hospital practice in Bo-galusa and the surrounding area at the *222 time. We also find on the basis of Dr. Feinberg’s testimony that there was nothing so unusual about Mrs. Hunt’s post-operative condition as to convince him that further protection was necessary. We must conclude that the trial court erred in finding negligence on the part of the Medical Center.
For the above and foregoing reasons, the judgment of the trial court is reversed and judgment is rendered in favor of defendants Bogalusa Community Medical Center and St. Paul Fire and Marine Insurance Company dismissing plaintiff’s suit at plaintiff’s costs.
Reversed and rendered.