303 So.2d 745 (1974)
Emanuel HUNT and Mrs. Viola Stogner Hunt
v.
BOGALUSA COMMUNITY MEDICAL CENTER and St. Paul Fire and Marine Insurance Company.
No. 54,552.
Supreme Court of Louisiana.
December 2, 1974.
*746 A. Clayton James, Jr., James, Knight & Brumfield, Franklinton, for plaintiffs-applicants.
Dale E. Branch, Seal, Lee, Branch & Brown, Bogalusa, for defendants-respondents.
BARHAM, Justice.
This is an action for personal injuries and medical expenses brought by Mr. and Mrs. Hunt arising out of Mrs. Hunt's accidental fall from a hospital bed in the Bogalusa Community Medical Center. The Medical Center's insurer, St. Paul Fire and Marine Insurance Company, was also named as a defendant. The trial court held in favor of the plaintiffs, awarding Mrs. Hunt the sum of $10,000.00 for the pain and suffering that resulted from the fractured hip she sustained when she fell, and awarding Mr. Hunt the sum of $1,621.41 for medical expenses. The court of appeal reversed. 289 So.2d 219 (La. App. 4th Cir. 1973). We granted certiorari to determine the issue of the Medical Center's negligence. 293 So.2d 180 (La. 1974). We reverse the decision of the court of appeal and reinstate the trial court's judgment.
The facts of the case are these. Mrs. Hunt was hospitalized in the Bogalusa Community Medical Center on September 9, 1969. The following day she underwent surgery for the removal of her gall bladder. Around 5:00 A.M. on September 13, 1969, she fell from her bed and sustained a broken hip. The central issue is whether or not the hospital provided adequate guard rails on Mrs. Hunt's bed, considering her condition at the time. From the record it is determined that there are generally two types of guard rails installed on hospital beds, i. e., either partial rails or full-length rails. The trial court made a finding of fact that Mrs. Hunt's bed was equipped with only two partial rails; the court of appeal did not disturb that finding and neither shall we. Whether or not these partial rails were up at the time Mrs. Hunt fell from bed is not clear from the testimony. After her fall, however, the *747 hospital installed two additional rails for her protection.
The trial court held that two partial rails were not sufficient protection for a postoperative patient over sixty-five years old. This holding was based on the reasoning that even if the two partial rails were up, a restless patient could roll over and fall out because the partial rails provide no protection for the feet and legs to keep them on the bed. We concur in the trial court's finding that this patient would probably have fallen out of the bed whether or not the rails were up because with partial rails, once the feet and legs have moved off the side of a bed, it would be easy for a patient to simply roll out of the bed.
A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. A determination of whether a hospital has breached the duty of care it owes to a particular patient depends upon the circumstances and the facts of that case.
This patient was seventy-three years old. In 1968 she had suffered a stroke, which resulted in persisting occasional dizziness. Because she was a postoperative patient, she was being administered narcotics for pain and phenobarbitols for nausea and restlessness. Those persons who saw her the night of the accident, including members of her family as well as nursing personnel, were in agreement that she was confused and heavily sedated at the time. In her doctor's words, she did not have "clear sensorium." Her doctor had recommended to the family that she have full-time private duty nursing care because of her age and her condition, and the family had complied with this suggestion. The doctor testified that, in retrospect, he felt she should have had full rails on her bed. Mrs. Hunt testified that she remembers nothing of the fall or the evening on which it occurred; she refers to her condition that night as "drunk" or "dead." We hold that under the circumstances of this case, the two partial rails were insufficient protection for this patient, and the hospital was negligent in not providing better protection.
Those cases in which a contrary result was reached are easily distinguishable on their facts. In DeBlanc v. Southern Baptist Hospital,[*] 207 So.2d 868 (La.App. 4th Cir. 1968), the accident occurred before surgery, and the patient was not sedated at the time. The patient also appeared alert and awake to all who had seen her prior to her fall from the bed with partial rails. In Killgore v. Argonaut-Southwest Insurance Co., 216 So.2d 108 (La.App. 2d Cir. 1968), the bed was equipped with full-length rails which the patient climbed over. In Noble v. Insurance Company of North America, 248 So.2d 12 (La.App. 1st Cir. 1971), the patient was alert and awake and her fall resulted because she ignored her doctor's instructions that she could go to the bathroom only if she sought assistance from a nurse. See also Smith v. West Calcasieu-Cameron Hospital, 251 So.2d 810 (La.App. 3d Cir. 1971).
We pretermit a discussion of whether the hospital's negligence in this case constituted a violation of the standard of care in the community because there is not enough testimony in the record to establish such a standard factually. We also pretermit inquiry into the question of whether a "community standard of care" is applicable in *748 such cases. We limit our holding to a finding of negligence on the part of the hospital in its breach of duty to this particular patient. La.C.C. arts. 2315, 2316.
The case is reversed and the judgment of the trial court is reinstated. Costs are cast against the medical center and its insurer.
SUMMERS, J., dissents for the reasons assigned.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I disagree with the majority opinion. I find no negligence on the part of defendant medical center. Mrs. Hunt's bed was equipped with two partial rails. Mrs. Hunt had a full-time registered nurse at the time of the accident. The nurse was employed by the plaintiffs. The accident occurred when the nurse was briefly out of Mrs. Hunt's room. Plaintiff's doctor had not ordered full rails and testified that the euqipment provided by the hospital was adequate. Moreover, the court of appeal concluded from the record that the prevailing standard of care at that time within the community, as evidenced by the testimony of various area hospital administrators, was that the use of partial guard rails was adequate in preventing the type of accident that occurred here. Perhaps, the failure of the doctor to order full guard rails for Mrs. Hunt's bed or the action of the nurse in leaving the room unattended can be said to constitute negligence; however, I find no breach by the hospital of its duty of care to Mrs. Hunt. Accordingly, I respectully dissent.
SUMMERS, Justice (dissenting).
Plaintiff's doctor was asked by her family if he thought she should have a special private duty nurse. He advised that he felt the patient needed a special nurse in addition to the hospital staff. The hospital did not provide a nurse in the patient's room 24 hours a day. When this service is required, private duty nurses must be employed by the patientin this case by members of the family. Accordingly, the family did employ private duty nurses, and one was on duty the night of the accident. The doctor expected the private duty nurse to be principally responsible for the patient's care. That is the procedure in the hospital. At the time, when the patient fell from the bed, the special duty nurse had left the room to empty a waste basket.
As I understand the facts, the bed provided by the hospital in which this patient lay had four guard rails; two at the head and two at the foot. These rails were up at the time of the accident; they were kept up at all times.
In my view the primary and proximate cause of the injury to this patient was the absence of the private duty nurse from the room when the accident occurred. This was not the fault of the hospital or its staff.
I respectfully dissent.
NOTES
[*] In DeBlanc, the court established the following useful criteria for determining whether or not, bed rails are needed for a patient: (1) disorientation of the patient; (2) sedation; (3) post-operative condition; (4) age; (5) any other condition which might reasonably indicate a danger of the patient's falling out of bed. 207 So.2d at 870.