340 So.2d 1065 (1976)
Carrie Mae JENKINS et al.
v.
BOGALUSA COMMUNITY MEDICAL CENTER et al.
No. 11019.
Court of Appeal of Louisiana, First Circuit.
December 20, 1976.
Garland R. Rolling, Metairie, for plaintiffs.
Dale E. Branch, of Seal, Lee, Branch & Brown, Bogalusa, for defendants.
Before LANDRY, C.J., and COLE and CLAIBORNE, JJ.
COLE, Judge.
This is an appeal by the surviving spouse and children of Joseph L. Cammatte from a judgment rejecting their claim under La. C.C. art. 2315 for damages resulting from an injury sustained by the deceased, which they allege caused or contributed to his death. Defendants in the suit are the Bogalusa Community Medical Center and its insurer, St. Paul Fire and Marine Insurance Company. We affirm.
After careful review, we agree that the facts are substantially as found by the trial judge. Mr. Joseph Cammatte was admitted as a patient in Bogalusa Community Medical Center on September 11, 1970, for the treatment of a severe gouty arthritic condition with which he had been afflicted for many years. Although he had been admonished several times not to get out of bed without ringing for assistance, on the early morning of September 16, 1970, at approximately 12:30 A.M., Mr. Cammatte got out of his bed without ringing for assistance and went to the bathroom which was located across the hall from his room. As he was returning to the room, he fell in the hall and fractured his hip. The hospital staff on duty at the time of the accident immediately responded to his need for assistance and placed him back in bed. His physician was contacted. The next day Mr. Cammatte was transferred to Touro Infirmary in New Orleans where he underwent surgery for his hip. Mr. Cammatte died on October 5, 1970, during the recuperative stage following the surgery. The cause of death was an apparent pulmonary embolism.
At the time of the accident Mr. Cammatte was seventy-two years old. His gouty arthritis had severely crippled and enlarged both his hands and his feet. However, his family testified that he was able to *1066 continue his work as a self-employed carpenter and contractor until the time of his death. They further testified that he was able to walk successfully without any artificial aids.
Mr. Cammatte was provided with standard hospital equipment in keeping with his physician's requirements. Bed rails were in use and were totally unrelated to the accident. The hospital further provided Mr. Cammatte with all routine services in accordance with the standard of care commensurate with that prevailing in hospitals in this state and in communities of similar size and circumstances.
Appellants contend that the hospital breached a duty of care it owed to the decedent in failing to prevent the accident. Appellants base this contention on the case of Hunt v. Bogalusa Community Medical Center, 303 So.2d 745 (La.1974). In Hunt, the patient in question was recovering from surgery and was "confused and heavily sedated" at the time of the accident. The hospital was held liable for its failure to provide full instead of partial bed rails to the patient in order to prevent the patient from falling out of bed. The Supreme Court in the Hunt case reversed the Court of Appeal and reinstated the decision of the trial judge which held the hospital liable. This same trial judge distinguished Hunt in the instant case in holding that the hospital was not liable.
In this case it is clear that the only drug that could have had any effect upon the decedent at the time of the accident was Demerol which had been administered approximately two and one-quarter hours prior to the accident. Dr. John Ball, an internist who had treated the decedent since 1968, testified that Mr. Cammatte had been receiving the drug Dolophine (also known as Methadone) over a period of several years for pain and had developed a tolerance to it, negating any side effects. He further testified that a tolerance to Dolophine results in a cross-tolerance to Demerol. A review of the hospital records also indicates that Mr. Cammatte had been receiving Demerol intermittently for almost twenty years. We agree with the trial court's premise, based upon the testimony of both Dr. Ball and Dr. Eugene Caillouet, that Mr. Cammatte had a tolerance to the drug Demerol and, therefore, its administration did not affect Mr. Cammatte's ability to function. As a result of the tolerance, he was aware of his surroundings, able to understand instructions to stay in bed and seek assistance in getting up, and capable of acting on such instructions. It is further shown by Dr. Ball's testimony and by the hospital records that since the last shot of Demerol had been administered to the decedent over two hours before the accident, the side effects from the drug, if any, would be wearing off at the time of the accident. In the reasons for judgment afforded us by the trial court, it is stated:
"* * * [T]he Court finds as a fact that Mr. Cammatte was in full possession of his faculties and knew what he was doing when he got up that night without ringing for assistance."
This finding is amply supported by the evidence in the case and, as a conclusion reached by the trier of fact, we accord it the great weight to which it is entitled.
In enunciating the standard of care hospitals owe to their patients, the Court in the Hunt case said:
"A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. A determination of whether a hospital has breached the duty of care it owes to a particular patient depends upon the circumstances and the facts of that case." (303 So.2d at 747)
The record substantiates that the hospital exercised the requisite care that Mr. Cammatte's condition necessitated. To protect him from his physical incapacities the hospital provided bed rails on the bed, and instructed him several times not to attempt to get up without seeking assistance *1067 which was readily available at all times. Further, it is firmly established that Mr. Cammatte had no mental incapacities which would affect his awareness or his ability to understand and act upon the instructions given him. A hospital is not an insurer of a patient's safety. The duty owed by hospitals to patients is not designed to protect a patient against risks which patients who are aware of their surroundings and who are mentally capable should reasonably anticipate. See e.g., Killgore v. Argonaut-Southwest Insurance Company, 216 So.2d 108 (La.App.2nd Cir. 1968); DeBlanc v. Southern Baptist Hospital, 207 So.2d 868 (La.App.4th Cir. 1968); Noble v. Insurance Company of North America, 248 So.2d 12 (La.App.1st Cir. 1971).
The accident in question resulted from Mr. Cammatte's knowing failure to follow the instructions given him by the hospital staff and not from any breach of the hospital's duty to exercise due care to protect him. Even if we were to hold that the hospital breached its duty to the decedent, we would still be faced with the inescapable conclusion, based upon the considered and repeated refusal by Mr. Cammatte to follow logical instructions, that he was contributorily negligent. This is clearly established by the critical finding of the trial court which we have hereinabove quoted.
For the foregoing reasons, we affirm the judgment of the trial court. The costs of this appeal are assessed to the appellants.
AFFIRMED.