MARVIN, Judge.
Plaintiff appeals from the rejection of his demands, made in proper person, for malicious prosecution and wrongful detention arising out of his commitment under LRS 28:52 by the defendants, Dr. Braswell, the Caddo Parish coroner, Brentwood Hospital, a psychiatric hospital in Shreveport, and William E. Lockridge, a clinical psychologist and former friend of plaintiff. We affirm.
Plaintiff correctly contends that he has a cause of action for damages where he is detained even under legal process maliciously obtained upon grounds, the truth of which is either recklessly disregarded or known to be false. Plaintiff incorrectly contends that the trial court erred in not finding that plaintiff had proved his allegations at the trial. The record shows no manifest error or clearly erroneous findings and fully supports the judgment and reasons for judgment assigned by the trial court.
Plaintiff testified that he stayed home on December 20, 1976, because of an attack of indigestion and that he informed his employees of his intentions and his availability if he was needed in his business. He says he then fell asleep in an easy chair and was awakened later that afternoon by two policemen who took him into custody under the coroner’s order and transported him to Brentwood Hospital, all without any cause or threat by him to harm himself or others at any time.
Plaintiff’s testimony greatly conflicts with that of other witnesses whose version of the events of that day, which seem more logical and reasonable to us, were accepted by the trial court. Plaintiff himself refers to Lockridge as his long time and close friend. Lockridge testified that over the course of years plaintiff had demonstrated and had confided to him psychological despondency and suicidal tendencies to such an extent that Lockridge, concerned for his friend’s welfare and in accord with the ethics and practices of his profession, persuaded plaintiff to make a suicide pact with him to the effect that plaintiff would not attempt to take his own life without first contacting Lockridge.
Lockridge testified that about 8:00 a. m. on December 20, 1976, plaintiff telephoned him to say that he was breaking the agreement, and that he was going to get his *852 business in order in the next few days and then go to a nearby fishing lake and put a bullet in his head. Lockridge became alarmed that plaintiff had stated somewhat definitely the time and place he was planning to take his life and that plaintiff had dismissed Lockridge’s attempts to lead plaintiff into further discussion of his despondency.
Plaintiff’s daughter confirmed that plaintiff did have a telephone conversation about 8:00 a. m. on that morning with Lockridge. Plaintiff’s son, Ralph testified that his mother had taken the younger daughters from the family home on that day because she was afraid of what plaintiff might do. Plaintiff’s son Jonathan, testified that his mother told him on that day of plaintiff’s expressed intention “. . . to try and harm himself.” Plaintiff’s wife and plaintiff’s office manager talked to Lockridge on that day, essentially relating that plaintiff had indicated to each of them his intent. Before going to the coroner, Lockridge consulted with a Shreveport psychiatrist and obtained his agreement to treat plaintiff at Brentwood Hospital. Plaintiff’s family declined to execute affidavits or institute commitment proceedings essentially because they feared plaintiff’s retaliation because of plaintiff’s history and his alcoholism. Plaintiff was then 6'5" tall, weighed 280 pounds, and was described as violent.
In summary, the record shows that Lock-ridge attempted to verify plaintiff’s recitation of the situation by discussing the matter with plaintiff’s wife and with plaintiff’s business manager and that Lockridge then sought and obtained psychiatric advice, before going to the Coroner. Lockridge executed the affidavit required by the law then in effect (Act 614 of 1976).
The record strongly supports the lower court’s conclusion that plaintiff “. . . suffered some type of mental breakdown on the day in question and . . . Lockridge was acting in good faith in signing the affidavit to commit [plaintiff] for observation.” Brentwood Hospital received plaintiff and the commitment papers which stated that plaintiff was believed to be dangerous to himself or others, that plaintiff was suicidal and violent and may have a gun, and which stated plaintiff’s size. Brentwood temporarily confined plaintiff under reasonable conditions but did not accept plaintiff as a patient because no family member assumed financial responsibility or attested to insurance coverage. The Coroner was again contacted and made arrangements for plaintiff to be transferred to a public hospital (then Confederate Memorial) where plaintiff was seen by a psychiatrist who was also a deputy coroner. The deputy coroner’s report, dated the next day, recommended plaintiff’s continued commitment and observation for a short time.
The law then in effect authorized the Coroner to commit a person into protective custody even though the Coroner had not personally seen or examined the person committed. That law required the committed person to be examined within 48 hours after arrival at a commitment facility. The Coroner acted upon the affidavit of a clinical psychologist and long-time friend of plaintiff and upon the statement of the psychiatrist contacted by Lockridge that this psychiatrist would meet plaintiff at the private psychiatric hospital. Like Lock-ridge, the Coroner acted in good faith, upon sufficient and reasonable grounds, without negligent or reckless disregard for truth and without resulting liability to plaintiff. See former LRS 28:52 A, B, and E. Humphrey v. Feazel, 367 So.2d 897 (La.App. 2d Cir. 1979).
Similarly, it is not shown that Brent-wood Hospital violated any duty owed to plaintiff. See Hunt v. Bogalusa Community Medical Center, 303 So.2d 745 (La.1974). The hospital acted in response to the Coroner’s orders and confined plaintiff under reasonable circumstances for only two hours. Under these circumstances the hospital was not required to conduct a psychiatric or other examination to validate or verify the Coroner’s orders. Plaintiff was examined by a psychiatrist within the 48-hour period required by the statute.
For detailed reasons given by the trial court and summarized here, we affirm the judgment appealed at the plaintiff’s cost.