Mrs. Mildred CALDWELL, et al.

v.

UNITED STATES of America.

Civ. A. No. 80–4116.

United States District Court,
E. D. Louisiana.

Sept. 23, 1982.

Nick Noriea of Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, La., for plaintiffs.

Ronald Fonseca, Asst. U. S. Atty., New Orleans, La., for defendant.

CHARLES SCHWARTZ, Jr., District Judge.

This matter was tried before the Court, sitting without a jury on a former day, at which time it was taken under submission. After careful consideration of the record herein, the evidence adduced at trial, the briefs of counsel, and the law, the Court finds as follows:

To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are so adopted.

FINDINGS OF FACT

Oscar Caldwell, a 63-year old male, was admitted to the Veterans Administration Hospital in New Orleans, Louisiana on March 21, 1979. At the time of admission he was confused, disoriented, suffering from an acute loss of memory, unable to determine the day, month or year, and unaware of his physical location. Prior to his

admission to the VA Hospital Mr. Caldwell had been hospitalized at the South Louisiana Medical Center in Houma, Louisiana where his condition was diagnosed as arterial embolization and atherosclerotic coronary vascular heart disease. At the time of admission to the VA Hospital, Mr. Caldwell was assigned to the Neurological Service, Ward 4–A, which was located on the fourth floor of the hospital. Because of Mr. Caldwell's condition, full restraint as necessary was ordered. He was placed in a Posey belt when the staff of the neurological ward was unable to watch him. On March 22, 1979, Oscar Caldwell wandered outside of the hospital and attempted to drive off in a vehicle which was located on a construction site next to the hospital. Members of the hospital's security force were notified and were able to bring Mr. Caldwell back to the fourth floor.

Because of Mr. Caldwell's attempt to leave the hospital he was placed in a seclusion room on the fourth floor; this is a private room near the nurse's station. The door has a small observation window and could be locked from the outside, preventing a patient from leaving the room. The outside windows of the room were equipped with metal locking devices, held by metal screws that were placed through the frame of the windows, preventing the windows from being opened more than six inches. The screws used to hold the locking devices in place were of the type that could be unscrewed with a regular screwdriver. Mr. Caldwell remained in the seclusion room from March 22 through March 24, 1979. In the afternoon of March 24, Ms. Kathleen Dean, a registered nurse assigned to the Neurological Service, conducted a routine check on Mr. Caldwell as soon as she came on duty. She checked the windows to determine that the window locks were functioning and that the window was open a few inches. During the visit Mr. Caldwell was cooperative with Ms. Dean. He asked Ms. Dean for a screwdriver to fix a loose screw on the nurse's call button on the wall in his room. Ms. Dean checked the call button on the wall and noticed that it was in order, but advised Mr. Caldwell that she would contact the proper authorities about the call button. Ms. Dean then left Mr. Caldwell and locked the door to the seclusion room.

Approximately twenty minutes later, at 4:20 P.M., Ms. Dean was notified that Mr. Caldwell had either jumped or fallen from the window to the ground, four stories below. Mr. Caldwell was found on the ground below his window by members of the hospital's security force within minutes of his fall. He was alive, but unconscious. He was rushed to emergency and treated. Mr. Caldwell died on March 26, 1979.

A vent, approximately four inches square which formed one of the vents on top of the air conditioning unit located in the seclusion room was discovered pried from the air conditioning unit after Mr. Caldwell's fall. Ms. Dean did not observe that the vent was loose during her visit in the room prior to Mr. Caldwell's fall. It appears that the air conditioner vent was the implement used by Mr. Caldwell to remove the screws from the window locking devices. The vent was located near the window from which Mr. Caldwell fell. No other object was found in the room after Mr. Caldwell's fall which could have been used by Mr. Caldwell to remove the screws and no such object was found on his person or in the vicinity of the fall. The window locking devices were found in the pocket of Mr. Caldwell's robe which he was wearing when he fell or jumped from the window.

Throughout his hospitalization at the VA Hospital, Mr. Caldwell exhibited no signs or indications to any physicians or members of the hospital staff that he had any suicidal or homicidal tendencies or that he was a danger to himself or others.

## CONCLUSIONS OF LAW

The Court has jurisdiction of this matter under the Federal Tort Claims Act, 28 U.S.C. 2671, et seq., and 28 U.S.C. 1346(b). Under that act, liability is determined in accordance with the law of the place where the act or omission occurred. *Orr v. United States,* 486 F.2d 270 (5th Cir. 1973). Under

the duty/risk analysis employed in Louisiana to determine a party's negligence, the Court is required to make a finding of whether the defendant breached a legal duty imposed to protect against the particular risk involved. *Hill v. Lundin & Associates, Inc.,* 260 La. 542, 256 So.2d 620 (1972); *Ross v. Central Louisiana State Hospital,* 392 So.2d 698 (La.App. 3rd Cir. 1980).

Dr. Kenneth Ritter, a psychiatrist called by the plaintiffs, testified as to the actions that may have been taken by other hospitals in the New Orleans area in regard to the deceased's tendency to wander. But the standard of care required of a hospital does not require a "community standard" in order to determine if a hospital is negligent under a particular set of circumstances. In Louisiana, the duty of a hospital toward its patients is that a hospital is bound to exercise the necessary care toward a patient that his condition requires; the hospital's duty extends to protecting a patient from dangers which may result from the patient's physical and mental incapacities and from external circumstances peculiarly within the hospital's control. Whether a hospital has breached its duty of care owed to a particular patient depends upon the facts and circumstances of the particular case. *Ray v. Ameri-Care Hospital,* 400 So.2d 1127 (La.App. 1st Cir. 1981) and cases cited therein; *Mullins v. Our Lady of the Lake Hospital, Inc.,* 402 So.2d 170 (La.App. 1st Cir. 1981); *Hunt v. Bogalusa Community Medical Center,* 303 So.2d 745 (La.1974).

Mr. Caldwell was placed in a medical ward at the time of his admission rather than in the psychiatric unit on the ninth floor of the hospital. Dr. Antonio Stazio testified that this decision was made, even with the confused, disoriented state exhibited by the deceased, because his condition was a result of an organic disorder and not a functional one which would necessitate treatment on the psychiatric ward. Even though the deceased was confused and disoriented, he was docile and calm, and Dr. Stazio testified that his condition was not at all unusual in patients suffering from strokes. The hospital attempts to place these patients in as normal an environment as possible. They are permitted to wander about the ward and are not restrained or confined unless necessary. Following the incident where Mr. Caldwell was found attempting to leave the hospital grounds in a truck, he was ordered placed in the seclusion room when he could not be watched by the staff.

It was Dr. Stazio's opinion that Mr. Caldwell did not possess the motor coordination to improvise a screwdriver out of an air conditioning vent, nor did his mental state warrant any suspicion that he would unscrew the locking devices and the window.

Dr. Kenneth Ritter confirmed that it could not be foreseen that the deceased would go out the window. He testified that there was nothing wrong with treating Mr. Caldwell by the neurology section of the hospital as long as Mr. Caldwell was placed in a secure environment because of his disoriented state and his tendency to wander.

Dr. Joseph M. Fazio, the deceased's treating physician, now in general practice, testified that he considered placing Mr. Caldwell in the psychiatric ward but rejected the consideration since Mr. Caldwell was suffering from a medical problem. Dr. Fazio also testified that if the psychiatric ward would have accepted medical problems, he would have placed Mr. Caldwell in that section because of the psychiatric aberrations the patient was exhibiting. The Court finds that Dr. Fazio's testimony lacked consistency and reliability generally and was obviously an attempt to discredit the policies of the VA Hospital.

Ms. Dean testified that neurological patients frequently ask for axes, hammers, and other types of tools, so she did not place any particular importance on Mr. Caldwell's request for a screwdriver.

A summary of all the testimony introduced in this case is to the effect that while the deceased was disoriented, had a tendency to wander, and given to unpredictable actions due to his state of confusion, he did not appear to have suicidal

tendencies. In fact, all witnesses testified that Mr. Caldwell did not exhibit any suicidal tendencies. There was no showing by plaintiffs that a preponderance of the evidence that there was any relevant reason for placing Mr. Caldwell in the psychiatric ward in an area that would have made it more difficult for him to commit a suicidal act.

Taking all these matters into consideration, plaintiffs have failed to show by a preponderance of the evidence that the decision of the defendant hospital to treat Mr. Caldwell on the medical ward and to employ the methods of restraint and protection available was that type of conduct which would amount to negligence that would constitute malpractice. That is, plaintiffs have failed to demonstrate that the VA Hospital breached a legal duty to protect against the risk that a patient in Mr. Caldwell's condition would fall from a window secured with locking devices. Moreover, it appears that it was more reasonable to treat a person suffering primarily from a stroke condition as a medical, rather than a psychiatric, patient. It is only by taking into account subsequent events unforeseeable during the deceased's confinement in the hospital that one can find any fault whatsoever with the decision made with respect to the treatment afforded to the deceased. Accordingly, there should be judgment herein in favor of the defendant, dismissing plaintiffs' claims at their cost.[1] The Clerk of Court is directed to enter a judgment in accordance herewith.

---

1. A question was raised at trial as to the validity of the adoption papers of Wayne Caldwell. As we find no actionable negligence on the part of the defendant, we do not pass on the issue of Wayne Caldwell's right to recover.