655 So.2d 597 (1995)
Allen J. BORNE, Plaintiff-Appellant,
v.
ST. FRANCIS MEDICAL CENTER, Defendant-Appellee.
No. 26940-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1995.
*598 C. Daniel Street, Monroe, for appellant.
Hayes, Harkey, Smith & Cascio, Bruce M. Mintz, Monroe, for appellee.
Before NORRIS, HIGHTOWER and WILLIAMS, JJ.
WILLIAMS, Judge.
This wrongful death and survival action results from a patient's fatal fall while in the care of a hospital facility. The original plaintiff and widower of the decedent, Allen J. Borne, filed this suit against the defendant, St. Francis Medical Center, Inc. Subsequently, Mr. Borne died and Johnny Kovac, the decedent's nephew, was substituted as plaintiff. After a trial on the merits, the trial court entered judgment rejecting plaintiff's demands and finding the defendant did not breach the duty of care which it owed to the decedent. From that judgment, plaintiff appeals. We affirm.

BACKGROUND FACTS
The decedent, Irene Borne, was a feisty, strong-willed, eighty-one-year-old woman. She underwent back and hip surgery in December 1988, resulting in a diminished level of her brain function. Dr. Frank Weinholt, a neuropsychiatrist, was consulted. He prescribed intravenous drugs, and Mrs. Borne's condition improved. She was discharged from the hospital in early January 1989.
On January 16, 1989, approximately four days after being discharged, Mrs. Borne's condition deteriorated and she became almost catatonic. Dr. Weinholt was again consulted, and he admitted her to the psychiatric ward at St. Francis Medical Center. Dr. Weinholt resumed the intravenous drug therapy, and, mentally and emotionally, Mrs. Borne became her "old self" again. However, she remained physically weak.
On February 2, 1989, Dr. Weinholt transferred Mrs. Borne to the rehabilitation unit at St. Francis Medical Center so she could regain her strength. While in the rehabilitation unit, Mrs. Borne was constantly medicated and was prone to falling when she walked. As precautionary measures, the nursing staff raised and locked two of the bed rails on Mrs. Borne's bed, lowered the bed, and tied her call button to the bed rails.
Despite the precautions taken by the nurses, on the early morning of February 3, 1989, Mrs. Borne got out of bed without assistance. She fell as she attempted to climb back in bed. After the nurses found her on the floor, they warned her not to get out of bed without help and instructed her to use her call light for assistance. They raised all four of the bed rails, instead of the usual two, and locked them in position. A few hours later, Mrs. Borne got out of bed again. The nurses found her in the bathroom on the commode, unable to get up. The nurses repeated the verbal warning to her to not get out of bed without assistance, and they informed Dr. Weinholt of the incidents.
Later that day, Dr. Weinholt ordered the nurses to place a sign in Mrs. Borne's sight to remind her she had previously fallen and was not supposed to get out of bed without help. Mrs. Borne subsequently tore the sign down. As a further precaution, Dr. Weinholt ordered the nurses to place Mrs. Borne in a posey vest to restrain her to her bed at night and when left alone. For the next two days, Mrs. Borne cooperated without incident.
On February 5, 1989, Mrs. Borne resumed getting out of bed, without assistance. At 2:00 p.m., she was found in her room, sitting in a chair. At 4:10 p.m., when she called for help, she was found on the floor beside her bed, sitting in her posey vest. She had untied the posey vest which had been tied to her bed rails. St. Francis Medical Center's nursing staff again notified Dr. Weinholt of these incidents. At 5:15 p.m. on the same evening, Dr. Weinholt asked the nurses to help Mrs. Borne's family members arrange for sitters to watch her. Dr. Weinholt then made unsuccessful attempts to telephone Dr. Crook, a close relative of Mrs. Borne. Consequently, sitters were never scheduled to watch Mrs. Borne.
*599 Meanwhile, the nurses increased their efforts to prevent Mrs. Borne from getting out of bed alone. They tied Mrs. Borne's posey vest underneath the bed, instead of at the side. They began checking her every fifteen minutes to make sure she was not attempting to get out of bed. They also left the door to her room open so she could be seen each time one of the nurses passed by her room.
At 8:10 p.m., despite the nurses' attempts to keep her in bed, Mrs. Borne walked out of her room and fell in the hallway. As a result of this fall, she suffered a fractured skull. She died eleven days later.

DISCUSSION
Plaintiff contends the trial court erred in failing to find defendant liable for the damages resulting from Mrs. Borne's fatal fall. More specifically, plaintiff argues defendant breached a duty of care in that it had knowledge of Mrs. Borne's condition and failed to act reasonably in protecting her from falling. Defendant does not deny its duty to protect Mrs. Borne from this risk of harm; rather, defendant asserts it acted reasonably in its attempts to prevent this incident from occurring.
Hospitals are "bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require." Hunt v. Bogalusa Community Medical Center, 303 So.2d 745, 747 (La.1974).
It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. A determination of whether a hospital has breached the duty of care it owes to a particular patient depends upon the circumstances and the facts of that case.
Hunt, supra. In finding or refusing to find a breach of duty, the trial court has great discretion. Dodson v. Webster Parish Police Jury, 564 So.2d 760, 764 (La.App. 2d Cir.), writ denied, 567 So.2d 1127 (La.1990).
After reviewing the record, we conclude that the trial court was not clearly wrong in its determination that the defendant acted reasonably in caring for Mrs. Borne. According to the evidence, each time defendant's nursing staff found Mrs. Borne out of bed, they implemented additional safety precautions geared toward keeping her in bed. They verbally warned Mrs. Borne many times not to get out of bed without help, and they placed a sign on her wall as a reminder. They raised all four of the side rails on her bed instead of the usual two. They placed her call button within her reach and made sure she knew how to use it. They restrained her to her bed with a posey vest and placed the knot on it underneath the bed so she could not untie it. They checked on her every fifteen minutes and left her door open so they could look in on her each time they passed her room, thereby providing a high level of observation, just short of a one-to-one sitting arrangement.
Further, Dr. Weinholt, Mrs. Borne's treating physician, visited Mrs. Borne within thirty minutes before the fatal fall. At that time, he felt confident that the posey vest would keep Mrs. Borne in bed. He approved of the actions taken by St. Francis Medical Center's nursing staff and believed they acted properly. Although he requested that they help the Borne family obtain sitters, he did not expect the sitters to be in place that night, nor did he expect St. Francis Medical Center to provide the sitters. Also, Dr. Weinholt never suggested this was an emergency which immediately required sitters. He testified that he believed Mrs. Borne would be safe until sitters or family members could arrive. Further, the record shows that Mrs. Borne was alert and capable of understanding and following instructions if she wanted to. There was less than a three-hour interval between the time Dr. Weinholt suggested a sitter for Mrs. Borne and her fatal fall.
Nancy Lowery, an expert in the field of nursing who testified on behalf of defendant, testified that defendant's nursing staff acted properly and did everything they reasonably should have done. She further testified that nothing done by the nursing staff contributed to Mrs. Borne's demise.
Ruth Ulrich, an expert in the field of nursing, testified on behalf of plaintiff. Her testimony supports Ms. Lowery's testimony that *600 defendant's nursing staff did not contribute to Mrs. Borne's death. Although Ms. Ulrich testified that the nursing staff breached its duty of care, none of the breaches she mentioned appear to have contributed to Mrs. Borne's fall. The breaches of duty noted by Ms. Ulrich are the following: (1) the nursing staff never produced for inspection, a care plan developed for Mrs. Borne; (2) they did not document one of the incidents involving Mrs. Borne's falls; (3) they failed to mention in the nurses' notes, the fact that a warning sign was placed in Mrs. Borne's sight; (4) they failed to show in the nurses' notes that they monitored Mrs. Borne's restraints; (5) they failed to show they loosened Mrs. Borne's posey vest every two hours for fifteen minutes; and (6) they failed to show in the nurses' notes that they checked on Mrs. Borne every fifteen minutes. Assuming each of the above shortcomings constitutes a breach of duty owed to Mrs. Borne, plaintiff failed to show how any of them contributed to Mrs. Borne's fall. Other evidence in the record reflects that although documentation was lacking, the nursing staff actually performed the tasks and had actual knowledge of the incidents. The trier of fact's conclusion that none of the above omissions caused Mrs. Borne's death is reasonable.
In the matter before us, defendant was presented with a non-emergency situation. Mrs. Borne's treating physician observed Mrs. Borne less than thirty minutes before she fell, approved the safeguards taken by defendant's nursing staff, and did not deem any additional measures necessary. Although defendant could have deployed its personnel to sit one-to-one with Mrs. Borne, such action would have diminished the level of care provided to other patients and was not reasonably warranted under the circumstances. Accordingly, we conclude the trial court was not clearly wrong in finding that defendant did not breach a duty of care which caused the injury sustained by Mrs. Borne.

CONCLUSION
For the foregoing reasons, the trial court judgment rejecting the plaintiff's demands is affirmed. Costs of appeal are assessed to Johnny Kovac.
AFFIRMED.