721 So.2d 518 (1998)
Wade P. LOPEZ, Jr., Plaintiff-Appellant,
v.
STATE of Louisiana, LOUISIANA HEALTH CARE AUTHORITY/UNIVERSITY MEDICAL CENTER, Defendant-Appellee.
No. 98-577.
Court of Appeal of Louisiana, Third Circuit.
October 28, 1998.
*519 Michael Herschel Colvin, Baton Rouge, for Wade P. Lopez.
Timothy Alan Maragos, Laura P. Shell, Lafayette, for State, La. Health Care Authority, Etc.
Before YELVERTON, THIBODEAUX and SAUNDERS, JJ.
THIBODEAUX, Judge.
Wade Lopez sued the State of Louisiana, through the Louisiana Health Care Authority, University Medical Center, and Jane Doe for an injury to his forehead which he sustained when the Medical Center's door opened in his direction. At the close of the plaintiff's presentation of evidence, the trial court granted the defendants' Motion for Involuntary Dismissal, dismissing plaintiff's claims with prejudice. Plaintiff appeals. Because the evidence supports the conclusion that there was no negligence on the part of the Medical Center, we affirm.

I.

ISSUES
The issues to be decided are:
1) Whether "manifest error" is the proper standard of review;
2) Whether the hospital breached a duty of care to the plaintiff;
3) Whether the trial court properly dismissed plaintiff's claims under La.Code Civ.P. art. 1672(B).

II.

FACTS
On October 1, 1994, the plaintiff, Wade P. Lopez, Jr., admitted himself to the detoxification unit of University Medical Center (UMC) where he began treatment for chemical dependency. On October 4, 1994, Mr. Lopez was standing with several other detox patients in the hallway outside of the "detox" unit to be escorted outside for a cigarette break. The door behind which he was standing opened and he was struck in the eyebrow area of his forehead. Another detox patient, testifying as an eye witness for Mr. Lopez, stated that the person opening the door was a female nurse in a white uniform, and that she opened the door as if she were in a hurry. Mr. Lopez did not fall down or lose consciousness and was treated with a compress. He took four more smoke breaks on October 4th and was examined by the unit physician on duty, Dr. Michael Kennedy. Dr. Kennedy did not note any mark or swelling from the "bump" on the forehead and wrote up Mr. Lopez' discharge for the following day as scheduled.
*520 This particular hallway just outside the kitchen and the detox unit had been designated as the waiting area for the group en route to scheduled smoke breaks. During his tenure in the detox unit at UMC, Mr. Lopez had waited in this location for approximately 17 previous smoke breaks since his admission to the facility on October 1, 1994. The door which struck Mr. Lopez was one of two metal doors in a double door-way construction. Both doors, or door panels, were hinged at the outer edges, and both contained vertical windows near the inside edges, where they opened. The door panel on the right contained a push bar or "panic bar" that caused the door to open one way, into the detox unit. The door panel on the left did not contain a push bar in the hallway where the patients waited. Its push bar was on the inside of the detox unit allowing it to open one way also. This left door panel only opened outward into the hallway where the patients waited. Near the top inside edge of the left door was a silver-colored metal door stop which was aligned with a silver-colored metal plate on the wall adjacent to it. The plates or door stops were magnetized and were used to keep the left door opened against the wall in certain circumstances.
Trial testimony indicates that Mr. Lopez was standing alone against the left wall under the silver door stop, while the other detox patients waited along the opposite wall. The nurses progress notes from a couple of hours before the incident indicated that he was alert, oriented, communicative and cooperative. In fact, Mr. Lopez had participated in a smoke break at 6:30 on the morning of October 4th.

III.

LAW AND DISCUSSION

A. Standards of Review

Trial Court
The trial court has much discretion in determining whether to grant a motion for involuntary dismissal. Continental Ins. Co. v. Three Seasons Pest Control Co., 94-1094 (La.App. 3 Cir. 2/1/95); 649 So.2d 1220. The trial court is not required to review the evidence in the light most favorable to the plaintiff. Shafer v. State, Through DOTD, 590 So.2d 639 (La.App. 3 Cir.1991). When a Motion for Involuntary Dismissal is made, the court must evaluate all of the evidence that has been presented and grant the motion if the plaintiff has failed to establish his case by a preponderance of the evidence. La.Code Civ.P. art. 1672(B); Crowell v. City of Alexandria, 558 So.2d 216, 218 (La.1990).

Appellate Court
Generally, a court of appeal may not set aside a trial court's or jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). The Louisiana Supreme Court specifically holds that the appellate court should not reverse the trial court's grant of involuntary dismissal, which is authorized by La.Code Civ.P. art. 1672, in the absence of manifest error on the part of the trial court. See Continental, 649 So.2d at 1222, citing Marcotte v. Travelers Ins. Co., 258 La. 989, 249 So.2d 105 (La.1971).
In order to reverse under the manifest error rule:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993).
However, the plaintiff asserts that the "manifest error" standard of review is not applicable because the trial court applied the wrong law. We disagree. We find that the lower court applied the law of negligence and strict liability, as well as the law of respondeat superior, and correctly determined that the University Medical Center (UMC) did not breach its duty of care to the plaintiff through the actions of its nurse. More specifically, and as fully set forth below, UMC's nurse employee properly opened a non-defective one-way door, with which the plaintiff *521 was intimately acquainted, and behind which he was improperly standing.

B. Assignment of Error
In his only assignment of error, Mr. Lopez contends that the trial court erred in granting the Motion for Involuntary Dismissal pursuant to La.Code Civ.P. art. 1672(B). However, the record reflects that the trial court properly granted the Medical Center's Motion for Involuntary Dismissal based upon the evidence presented by Mr. Lopez and based upon the theories of law applicable to this case. More specifically, La.Code Civ.P. art. 1672(B) provides that:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
Accordingly, we find that based upon the evidence in the record and the jurisprudence below, the plaintiff in this case has not shown a right to relief, and that the trial court properly dismissed the plaintiff's case.

C. Theories of Liability
Mr. Lopez has asserted claims against University Medical Center under independent negligence, for its own fault, as well as under the doctrine of respondeat superior, for the alleged negligence of the nurse who opened the door behind which the plaintiff was standing. The plaintiff also earlier asserted strict premise liability claims, alleging a defect in the door which struck the plaintiff.

D. Negligence
Mr. Lopez alleged that the accident was not connected to his medical care and treatment. He then proceeded to allege medical malpractice in the alternative. However, there is no evidence in this case to indicate medical malpractice and the plaintiff has not presented any issue to a medical review panel as required under the Medical Malpractice Act, La.R.S. 40:1299.41 et sequitur and Sewell v. Doctors Hospital, 600 So.2d 577 (La. 1992). Accordingly, the hospital's standard of care under a malpractice theory of negligence will not be discussed. However, with regard to the plaintiff's injuries occurring on the premises, he has alleged that the hospital owed a special duty to him that was higher than the standard of care owed to visitors.
More specifically, Mr. Lopez has asserted that under Hunt v. Bogalusa Community Medical Center, 303 So.2d 745, 747 (La. 1974), the "hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require" ... and to protect the patient from dangers resulting from the patients "physical and mental incapacities" as well as external circumstances within the hospital's control. In this case, the plaintiff attempts to analogize Hunt, where a 73-year old postsurgery patient who was confused and heavily sedated, fell from a bed with partial rails instead of full rails, rendering the hospital negligent in not providing sufficient protection. However, it is obvious from the record that the facts and circumstances in the present case distinguish it from Hunt, where the evidence shows that Mr. Lopez was not confused or heavily sedated, and that the University Medical Center did not fail to adequately protect him.
More specifically, in Hunt, the 73-year old patient had had a stroke several years earlier which resulted in persisting dizziness. She was also a postoperative patient who was being administered narcotics for pain and phenobarbital for nausea and restlessness. The patient herself referred to her condition on the night of her fall as "drunk" or "dead," and her doctor stated that she did not have "clear sensorium." Hunt at 747.
Conversely, in the present case, Mr. Lopez was standing, not lying, in a hallway, waiting to go outside of the facility to smoke a cigarette. The mere fact that Lopez, a detox patient, was ambulatory and was electively preparing to walk outside to smoke demonstrates that he was not physically or mentally incapacitated to the extent of the post-op *522 patient in Hunt or that his condition even vaguely resembled hers. In fact, the record in the present case reflects that the attending nurse recorded in her Progress Notes that Mr. Lopez was calm, steady and aloof approximately two hours before the incident with the door. Moreover, Dr. Kennedy examined the patient after the incident and did not even note a mark on the plaintiff's forehead or record any physical difficulties or problems with his demeanor.
Hence, the Hunt case is entirely distinguishable from the present case which is more similar to other cases in this circuit which have found no negligence on the part of the hospital. In fact, the jurisprudence is replete with cases refusing to find hospitals such as UMC negligent for injuries sustained in a manner similar to Mr. Lopez under the circumstances of this case.
In Williams v. Sisters of Incarnate Word of Galveston, Tex., 341 So.2d 1299 (La.App. 3 Cir.1977), this court found the hospital free from negligence for injuries sustained by a 13-year old patient who fell when returning to bed after her mother insisted upon helping her take a shower. In that case, we articulated that the hospital's duty was limited and that the hospital was not the "insurer of a patient's safety" and, therefore, not required to guard against that which a "reasonable person under the circumstances would not anticipate as likely to happen." Williams at 1300. Accordingly, in Williams we found that the attending nurse reasonably assumed that the child's mother would attend to the daughter properly and not allow her to fall. Id.
Likewise, in Tolbert v. State, Through Louisiana Health and Human Resources Administration, 370 So.2d 166 (La.App. 3 Cir.), writ denied, 371 So.2d 1342 (La.1979), we found that the hospital did not breach its duty of care to a 14-year old patient who entered a vacant building, became intoxicated and engaged in sexual activities with other patients. Tolbert at 171. There, this court looked at Hunt, 303 So.2d 745, and at jurisprudence from other circuits and determined that the patient was of normal intelligence and that her history indicated that she "clearly had the mental capacity" to know the consequences of her actions. Further we found that the hospital staff had no reason to believe that the patient would act as she did, and that its actions did not fall below the standard of care required of it. Tolbert at 172.
Similarly, in the present case, a reasonable person would not anticipate that Mr. Lopez would stand against a wall behind a metal door panel that opened into the wall. The record shows that Mr. Lopez was alert, ambulatory, and had waited unassisted in the same hallway approximately 17 times for a cigarette break in the preceding three days. Hence, contrary to plaintiff's assertions that he was owed more care because he was a chemically impaired detox patient upon his arrival three days before, we find that given Mr. Lopez'"known condition and the facts and circumstances peculiarly applicable to the patient on that particular occasion" UMC did not fall below the care required. See Meynier v. De Paul Hospital, 218 So.2d 98, 102 (La.App. 4 Cir.1969).
The first circuit in Jenkins v. Bogalusa Community Medical Center, 340 So.2d 1065 (La.App. 1 Cir.1976), in denying recovery to the successors of a deceased patient, held that the "duty owed by hospitals to patients is not designed to protect a patient against risks which patients who are aware of their surroundings and who are mentally capable should reasonably anticipate." Jenkins at 1067. There, the patient was a 72-year old arthritis patient who got out of bed and went to the bathroom unassisted after being told to obtain assistance before leaving his bed. He fell, fractured his hip and subsequently died while recovering from the hip surgery. The court found that the patient was "in full possession of his faculties and knew what he was doing...." Jenkins at 1066.
Borne v. St. Francis Medical Center, 26,940 (La.App. 2 Cir. 5/10/95); 655 So.2d 597, writ denied, 95-1403 (La.9/15/95); 660 So.2d 453 absolved the hospital from negligence in a non-emergency situation and where no additional safety measures were required by the nursing staff to protect a feisty, disobedient patient. Parker v. Centenary Heritage Manor Nursing Home, 28,401 (La.App. 2 Cir. 6/26/96); 677 So.2d 568, writ denied, *523 96-1960 (La.11/1/96); 681 So.2d 1271 similarly exculpated a hospital from negligence for the patient's fall from a stretcher where evidence showed that the guard rails were up and the patient was coherent and lucid. In the present case, the evidence indicates that Mr. Lopez was only 37 years old at the time of the incident; he was calm, alert, and familiar with his surroundings but was simply and negligently standing in the wrong place.

E. Respondeat Superior
Mr. Lopez has alleged that the trial court ignored jurisprudence interpreting La. Civ.Code art. 2315, and that the trial court failed to consider the hospital's vicarious liability for the nurse's action in opening the door in a rapid manner. We have held that a hospital is responsible for the negligence of its employees, including nurses, and that the doctrine of respondeat superior is applicable. Donaldson v. Sanders, 94-1366 (La.App. 3 Cir. 7/19/95); 661 So.2d 1010, writ granted, 95-2940 (La.2/28/96); 668 So.2d 363. However, we find that the trial court in this case did consider the nurse's action and simply found that she did not act in a negligent manner which would render the hospital vicariously liable. More specifically, the court stated:
Yes, the nurse did gofrom your witness, the nurse went through the door quickly, but I would assume that that's something normal in a hospital that nurses would be hurrying around or going fast from one place to another, simply because of the type of business there.
The plaintiff asserted that the nurse opened the door too suddenly or too forcefully and was, therefore, negligent. However, employees in hospitals must often move quickly, particularly nurses. Patients' lives are at stake and moments count. Hence, it is clear that the trial court did evaluate the hospital's liability in light of the nurse's actions and properly found that she did not act negligently such that vicarious liability would be imputed to the hospital.

F. Premise Liability
Mr. Lopez also asserted that the hospital premises were in the custody and control of the defendant, University Medical Center, and that the premises presented an unreasonable risk of harm which harmed him.
In order to recover under either negligence or strict premise liability, the plaintiff in this case must prove: (1) the thing causing damage was in the custody of the defendant; (2) the thing contained a defect that created an unreasonable risk of harm to the plaintiff; and (3) the defective condition caused the plaintiff's injuries. Maxwell v. Board of Trustees for State Colleges & Universities, 96-1207 (La.App. 3 Cir. 3/19/97); 692 So.2d 641, writ denied, 97-0996 (La.6/13/97); 695 So.2d 987. A hospital like any other premise owner only has a duty to an invitee to discover conditions which are reasonably discoverable and to adequately warn the invitee of the danger to protect him from harm. See Goodeaux v. Martin Hospital, Inc., 333 So.2d 717 (La.App. 2 Cir.) (en banc), writ denied, 338 So.2d 295 (La.1976).
Custody in this case has not been disputed. Therefore, as a threshold matter, there must be evidence of a defect in the door. Apparently, the only defect being asserted is the size and location of the glass vision panel in the door, which plaintiff alleged at trial would not permit full view of the hallway outside the detox unit. However, the plaintiff's own safety expert, Mr. Owen, stated that
A. I can't criticize the location of the panel or the size of the panel based on the Life Safety Code, in that I have determined that there is no minimum width that's required by these panels. There is a maximum, but there is not a minimum.
Hence, there is no evidence in the record of a code violation with regard to the door that would render it defective. While there was reference at trial to the vision panel's having been covered at the time of the accident, the plaintiff's witness could not recall whether the panels were clear or covered, but remembered being able to see into the hallway.
Prior to the 1996 legislation essentially *524 abolishing strict liability[1], one difference between the theories of negligence and strict liability was that, under a strict liability theory, the plaintiff did not need to prove that the defendant had notice of a defect. However, in a strict premise liability action brought against a public entity, the plaintiff had to prove that entity's actual or constructive notice of the defect which caused the damage prior to the occurrence, and that the entity had had a reasonable opportunity to remedy the defect but failed to do so. See Maxwell at 644. In the present case where suit was brought against the State of Louisiana and Louisiana Health Care Authority/University Medical Center, the plaintiff must show that the hospital had notice of previous accidents occurring because of this allegedly defective door. However, no such evidence appears in the record. In fact, at trial the plaintiff's safety expert, Mr. Owen, admitted that the door was a one-way door and that he was basing his conclusions that the door was defective on a probability of undocumented "near misses:"
Q..... wouldn't it be relevant to know whether or not the hospital had ever experienced inany other incidents of this type in determining whether or not, you know, this needed a warning?
A. It would be nice to know, but there's so many cases ... that many times people have near misses....
A. Just the fact that you don't have an accident record does not mean that there has not been a lot of near misses....
Hence, the plaintiff has failed to show prior accidents involving this particular door which would have put the hospital on notice that the door was defective or required a warning. Notice issue aside, the plaintiff has failed to show that the door was defective, because a defect is a condition that creates an unreasonable risk of harm to persons on the premises. The alleged defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Lee v. Magnolia Garden Apartments, 96-1328 (La.App.1 Cir. 5/9/97); 694 So.2d 1142, writ denied, 97-1544 (La.9/26/97); 701 So.2d 990. In fact, the alleged defect must pose an unreasonable risk to the plaintiff.
More specifically, in Celestine v. Union Oil Co. of California, 94-1868 (La.4/10/95); 652 So.2d 1299, the Louisiana Supreme Court articulated the legal definitions of "defect" and "unreasonable" risk and the limitations placed on an owner's liability. In discussing a repairman's knowledge of certain conditions, the court stated that a building owner is not responsible for all injuries resulting from any risk posed by his building, but only those injuries caused by an unreasonable risk of harm to others. The court quoted Judge Rubin in Ladue v. Chevron, USA, Inc., 920 F.2d 272 (5th Cir.1991) and found that the determination of whether a risk is unreasonable is personal to the particular plaintiff:
Whether a particular risk of harm is reasonable cannot be determined in a vacuum. The phrase "unreasonably dangerous," in the words of Louisiana's late distinguished Professor Wex S. Malone, "has no discernible content of its own and ... must acquire its meaning solely from the environment attendant on each of the variety of disputes in which it is put to use." (footnote omitted.) Unlike the regime of strict products liability, which uses the "ordinary consumer" as its benchmark (footnote omitted), Louisiana's scheme of strict liability under Articles 2317 and 2322 posits no constant person or persons, mythical or real, with respect to whom the reasonableness of a given risk is to be measured. For that reason, the Louisiana courts have found themselvesunder the rubric of assessing a risk "under all of the circumstances of a particular case" (footnote omitted)determining the reasonableness of a given risk "vis-a-vis the plaintiff" (footnote omitted), or more accurately, vis-a-vis the plaintiff and those similarly situated.
Celestine at 1304 quoting Ladue at 277.
Celestine further stated that the determination of whether a particular risk of harm is reasonable is a matter wed to the facts of the case. Id.
*525 In the present case, the door which opened into the area outside the detox unit where the plaintiff was standing was one of a set of two metal doors or door panels. The door panel leading from the hallway into the detox unit contained a horizontally placed metal push bar for access. The door panel opening into the hall area where plaintiff stood contained no push bar, but did contain a door stop near the top edge which lined up with its silver metal counterpart attached to the wall where the plaintiff stood.
At trial, the plaintiff specifically stated that he was waiting outside the kitchen where the residents of the detox unit waited every day after breakfast to go take a smoke break. He stated that he was leaning against a wall in front of a door with no handle. An eye witness called by the plaintiff stated that she and several others in the detox unit were also waiting with Mr. Lopez to be escorted to their smoke break. She stated that Mr. Lopez was standing "right in front of the doorstop" and that she and the others were waiting along the opposite wall. Only Mr. Lopez was standing behind a door that opened directly into him. Yet, all patients were from the detox unit. It is apparent to this court, as it was to the trial court, that as to the plaintiff and all others similarly situated, the door in question did not pose an unreasonable risk of harm.
Moreover, the record shows that the plaintiff was admitted to the detox unit on October 1st, and by October 4th, when this incident occurred, the plaintiff had made at least 17 previous trips to take smoke breaks and had stood in this hallway by these doors at least 17 times. Hence, Mr. Lopez' knowledge of the hallway and its doors is similar to the knowledge of the repairman in Celestine, 652 So.2d 1299. Given the plaintiff's intimate knowledge of the area and his cognizance of the fact that the door did not have a push bar and would open into him, the door at issue did not pose an unreasonable risk of harm to him.
It is further observed by this court that doors are essentially inanimate and inflexible objects fixed into walls inside delineated parameters that do not expand. Even when opening to its widest angle, the door panel's reach is limited to its width. Mr. Lopez asserts that he was not standing in the "direct path of the door." The only implication that can be presented in this statement and the only inference that we can draw from it is that Mr. Lopez is asserting that the door reached out of its boundaries and struck him. We do not wish to attribute such anthropomorphic qualities to this door or to any door.
In the present case, the trial court heard the evidence and did not find the door defective. The trial judge found that
In this particular case, the plaintiff was behind a door or a panel. Really, it wasn't a door to him. It was a panel that obviously, from looking at it, would be opened from the other side. And if there is any negligence, I believe it was the plaintiff's negligence in being where he should not have been, and not negligence on the part of the hospital.
This finding is amply supported by the evidence in the case and as a conclusion reached by the trier of fact, we accord it the great weight to which it is entitled.

IV.

CONCLUSION
We conclude that the trial court properly applied the principles of negligence, including respondeat superior. We further find that the door was not defective, and that the trial court's finding that it was obvious that it would open from the other side and that the plaintiff was negligent in standing where he should not have been, was not clearly wrong. In light of our finding that University Medical Center was not negligent independently or vicariously, and that the door did not pose an unreasonable risk to the plaintiff, we need not reach the damage issue. Based upon the foregoing reasons, we affirm the judgment of the trial court, finding no manifest error in its grant of Involuntary Dismissal to the defendants herein.
The costs of this appeal are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] La.Civ.Code art. 2317.1.