497 So.2d 743 (1986)
Sandra Faye LANDRY, Individually and as natural tutrix of her minor children, Kayla Leigh Landry and Patra Lynn Landry, Plaintiff-Appellee,
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellant.
No. 85-716.
Court of Appeal of Louisiana, Third Circuit.
October 28, 1986.
Rehearing Denied December 9, 1986.
Writ Denied February 6, 1987.
Robert J. Adams of Fournet and Adams, Lafayette, for defendant-appellant.
Richard Putnam, Jr., Abbeville, for plaintiff-appellee.
John Blackwell, New Iberia, for defendant-appellee.
Before FORET, PLANCHARD[*] and McNULTY*, JJ.
ARTHUR J. PLANCHARD, Judge Pro Tem.
The State of Louisiana, through the Department of Transportation and Development, (the state), appeals from an adverse judgment by the trial court in this wrongful death action. The trial court awarded against the state $125,000.00 to appellee, *744 Sandra Faye (Landry) Langlinais and $150,000.00 each to appellee's two minor daughters Kayla and Patra Landry, for the death of Thomas Landry, appellee's husband and the children's father. The claims against the other defendants, the Vermilion Parish Police Jury and its insurer, National Union Fire Insurance Company of Pittsburgh were dismissed prior to trial.
By means of nine specifications of error, appellant challenges the court's findings in regard to liability and damages, as well as the court's failure to find contributory negligence or victim fault on the part of Thomas Landry. We find that the trial court's finding of liability on the part of the state was clearly wrong, and reverse. We therefore do not reach the other issues.

FACTS
Mr. Landry was killed in a one-car automobile accident which occurred at approximately eight-thirty on the night of May 11, 1981. Mr. Landry, alone in his automobile, was traveling westbound on Louisiana Highway 338 in Vermilion Parish, Louisiana, when he failed to negotiate a left-hand curve. The vehicle then plunged over the curve embankment, rolled over once and came to a rest in an upright position in a ditch bordering the roadway. Mr. Landry's death was apparently instantaneous.
La. 338 is intersected at the curve which Mr. Landry failed to negotiate by a parish road. The parish road and the westbound approach to the curve in the state highway were once part of a single straight roadway, but as a result of renovations made in the 1960's, this straight roadway was interrupted. The parish road now curves to intersect at approximately the middle of the outside edge of the curve in the highway.
Beyond the curved portion of the parish road, there remains a straight section which is part of the old roadway and is therefore in a line with the westbound approach to the curve in the highway. It is not disputed that because of the alignment of these two sections of roadway, headlights and/or taillights of vehicles on the parish road, can cause it to appear to the westbound nighttime motorist on La. 338, at some point or points in his approach to the curve, that the roadway continues in a straight line. The existence of this visual effect is, of course, dependent on the presence of a vehicle or vehicles on the parish road in a position to be seen by the highway traveler as he approaches the curve.
The westbound motorist on La. 338 is advised of the existence of the curve by means of three commonly used devices, a "curve warning sign," a 45 mile per hour "advisory speed sign" and a "no passing line." The "curve warning sign," which is posted approximately one-tenth mile before the beginning of the curve is a diamondshaped sign which depicts a black curved arrow against a reflective yellow background. The "advisory speed sign," which is mounted below the "curve warning sign" on the same post, is a square sign with black characters on a reflective yellow background. The "no passing line" is a solid yellow stripe painted along the inside edge of the westbound lane, which begins approximately even with the signs and continues through the curve, overlapping a similar line in the eastbound lane to form a "double yellow line" in the curve itself.
While there is some evidence to the contrary, the evidence as a whole clearly preponderates that the signs and striping were in place and quite visible at the time of the accident, and the trial court did not find otherwise. Rather, the court found that the accident was caused by the visual effect created by vehicle lights on the parish road, and that the warning devices employed were insufficient to protect against this danger. The court then concluded that the state was liable in negligence and in strict liability under La.C.C. art. 2317 for failing to employ other warning devices to dispel the impression that the road continued in a straight line.

THE ILLUSION
If the warning devices at the curve site were inadequate, they were inadequate only in that they did not eliminate the *745 possibility of a motorist being deceived by the illusion that the road continued in a straight line. Except for the visual alignment of the two sections of road, the curve was unremarkable. If the possible illusion is not considered, the warning devices employed to apprise the motorist of the existence and location of the curve were customary and clearly adequate, the danger in failing to heed them being obvious.
It need not now be determined whether the alignment of the two roads in fact imposed a duty on the part of the state to employ warning devices in addition to those which were employed, because the record clearly does not support a finding that the illusion, or the state's failure to eliminate it, was a cause of the accident.
It is axiomatic that a plaintiff cannot establish her entitlement to damages in a tort suit without establishing a causal link between the allegedly wrongful conduct of the defendant and the plaintiff's injury. In a civil case, one seeking to establish any essential fact, including causation, has the burden of proving that the proposition asserted is more probable than not, and where proof is to be made using only circumstantial evidence, that evidence taken as a whole, must exclude other reasonable hypotheses with a fair amount of certainty, though it need not negate all possible hypotheses. Lacey v. Louisiana Coca-Cola Bottling Company, Ltd., 452 So.2d 162, 164 (La.1984).
In this case, there were no eyewitnesses found, and therefore there was no direct evidence regarding the precise sequence of events leading to the accident. It is therefore not known even whether any vehicles were actually present on the parish road in a position to be seen by Mr. Landry as he approached the curve.
The circumstantial evidence found at the scene does not particularly point to the existence of an illusion or anything else as a more probable than not explanation for Mr. Landry's failure to negotiate the curve. That evidence indicates only that when Mr. Landry reached the curve, he continued on a straight course rather than turning with the road. Accidents of this type unfortunately are not uncommon, and often occur in the absence of any possible illusion and for reasons other than fault on the part of the state.
The trial court found that evidence of a traffic count for the two roads was "sufficient to establish the likelihood that the decedent was deceived into believing that the roadway had no curve." While this traffic count might possibly be of some value to a statistician in determining the statistical likelihood that an automobile will traverse the parish road at a given time, it does not establish more probably than not and to the fairly certain exclusion of other reasonable hypotheses that, as Mr. Landry approached the curve in the highway, there in fact were vehicles on the parish road and visible to him, which in fact did cause him to believe that the road continued in a straight line.
The regrettable truth is that, through no fault of either party, it is not possible to determine with any reasonable degree of probability the precise sequence of events leading to Mr. Landry's death. The hypothesis adopted by the trial court is really no more than speculation, and, as such, cannot properly serve as the basis for a finding of liability. Geisler v. Allstate Insurance Company, 489 So.2d 429, 434 (La. App. 3d Cir.1986).

THE SHOULDER
Appellee argues in brief the alternative theory of liability, not discussed by the trial court, that the accident was caused in part by a defect in the shoulder of the road. In support of this contention, appellee cites several cases in which the state was held liable for accidents caused by defective conditions of the shoulder.
In each of these cases there was some non-obvious and highly dangerous condition encountered by an unsuspecting motorist as he or she drove, either intentionally or through inadvertence, onto an apparently normal shoulder. In each case, the hazard encountered was not of a kind reasonably to be anticipated, and in each case, there was no warning of the dangerous condition. Finally, in each case, the dangerous *746 condition of the shoulder directly caused the accident which was the subject of the lawsuit.
In contrast, the evidence in this case does not establish either that the shoulder was defective or that it caused the accident. The evidence indicates rather that the shoulder was well-maintained and in good condition, and that the accident was caused because, despite the presence of warning devices and for reasons unknown, Mr. Landry failed to follow the curve in the road with tragic, but predictable results. The only apparent connection between the shoulder and this accident is that the Landry vehicle necessarily traversed the shoulder as it left the roadway and proceeded over the embankment. The shoulder obviously is not defective simply because it did not halt the progress of the vehicle.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed, vacated and set aside; the plaintiffs' suit is dismissed with prejudice. Costs of this appeal and at trial level are assessed against plaintiffs-appellees.
REVERSED AND RENDERED.
NOTES
[*] Judges Arthur J. Planchard, of the 14th Judicial District Court, and Michael J. McNulty, Jr., of the 16th Judicial District Court participated in this opinion by appointment of the Louisiana Supreme Court as Judges Pro Tempore.