562 So.2d 999 (1990)
Deloris LUCAS, Plaintiff-Appellee,
v.
ST. FRANCES CABRINI HOSPITAL, Defendant-Appellant.
No. 89-39.
Court of Appeal of Louisiana, Third Circuit.
May 23, 1990.
*1000 Ronny J. Champlin, Baton Rouge, and Eugene Cicardo, Alexandria, for plaintiff/appellee.
Gist, Methvin, Hughes & Munsterman, Howard Gist, Jr., Alexandria, for defendant/appellant.
S. Alfred Adams, Baton Rouge, for intervenor/appellant.
Before LABORDE, KNOLL and KING, JJ.
KING, Judge.
This appeal presents for consideration the issues of whether the trier of fact erred in finding that defendant committed malpractice, whether the trial court correctly gave a jury instruction on res ipsa loquitur, and whether the trier of fact was correct in its award of damages.
On April 6, 1984, Deloris Lucas (hereinafter plaintiff) was admitted to St. Frances Cabrini Hospital (hereinafter defendant) due to back pain and unusual female spotting and bleeding. It was decided that plaintiff was in need of a hysterectomy. In preparation for surgery, plaintiff was given an enema on the evening of April 12, 1984. During the surgery on the morning of April 13, 1984, retroperitoneal air was discovered in plaintiff's abdominal cavity. As a result, a colostomy was performed on plaintiff. Plaintiff sued defendant alleging that the nurse was negligent in the manner in which she administered the enema, thereby causing the presence of the retroperitoneal air. After trial before a jury, the jury returned a verdict in favor of plaintiff and awarded her $300,000 in general damages. The jury verdict was made the judgment of the court. Defendant appealed this judgment. The Louisiana Patients' Compensation Fund intervened on appeal. We affirm.

FACTS
On April 6, 1984, plaintiff, a fifty-one year old female, was admitted to St. Frances Cabrini Hospital complaining of back pain which had begun approximately six weeks previously and was becoming progressively worse. Plaintiff was admitted by Dr. J.D. Knoepp, a thoracic surgeon who had performed heart surgery on the plaintiff approximately three and one-half years prior to her April, 1984 admittance. The surgery performed on plaintiff's heart was mitral valve surgery which put plaintiff at risk for any subsequent surgeries. Dr. J.D. Knoepp, after admitting plaintiff to Cabrini Hospital, called in various other doctors including Dr. Ray Buerlot, an orthopedist, who concluded that plaintiff's back pain was caused by degenerative disc disease and possible HNP with possible sciatic nerve involvement on the left side, and Dr. Blanchard Texada, a surgeon who died before the trial of this matter, to evaluate plaintiff's female problems.
Dr. Texada, decided that plaintiff was in need of a transabdominal hysterectomy and salpingo oophorectomy. In preparation for surgery, Dr. Texada ordered that plaintiff be given a Fleet's enema on the evening of *1001 April 12, 1984. The enema was given by Nurse Roberts, an employee of defendant, to plaintiff at about 7:30 that evening. Nurse Roberts testified that she gave the plaintiff the enema without incident and that plaintiff did not complain of any discomfort. Plaintiff testified that while she did not tell Nurse Roberts, she felt burning and pain from the enema. Plaintiff's husband testified that plaintiff complained of such discomfort, but that he talked plaintiff out of calling the nurse because he did not want to bother her and because plaintiff was going to have surgery the next day.
The next morning, April 13, 1984, plaintiff was brought into surgery for the hysterectomy. Shortly after beginning surgery, Dr. Texada stated that he found retroperitoneal air present in the plaintiff's pelvic area. He then searched for the source of the air but was unable to find its etiology. Dr. Ronald M. Lewis, the anesthesiologist, present during the plaintiff's surgery, testified that Dr. Texada found no interior perforation and no fecal material, but saw only air. Dr. Texada continued his surgical procedure and performed the hysterectomy; however, he immediately called Dr. Knoepp to tell him of his findings.
Upon Dr. Knoepp's entrance into the operating room, Dr. Texada relayed his finding of retroperitoneal air. Dr. Knoepp did not look for the air, but rather, called in Dr. Wayne L. Walkins, a general and proliferal vascular surgeon, because he felt Dr. Walkins could better respond to plaintiff's needs. When Dr. Walkins arrived in the operating room and was told there was retroperitoneal air found when Dr. Texada began his surgical procedure, Dr. Walkins performed a loop sigmold colostomy for proximal diversion of the fecal stream and closed the abdomen. When asked why he performed the colostomy, Dr. Walkins' response was that, since the patient was at high risk due to her heart condition and because an infection is one of the worst complications, he thought that it was the best course of treatment to prevent a possible problem from developing. After performing the colostomy, Dr. Walkins then did a proctoscopy to examine plaintiff's rectum. He testified that he saw no obvious rectal perforation or any perforation of the colon. Dr. Knoepp also looked when the proctoscopic examination was performed and he testified that he saw nothing out of the ordinary.
After the surgery, plaintiff stayed in the hospital for approximately three weeks. The colostomy was removed about eight months later, after the doctors were certain that the possibility of infection had passed.
The jury, after hearing all the evidence, was instructed, given a special verdict form, and retired for deliberations. The jury returned a verdict in favor of plaintiff, answering the special verdict form as follows:
"1.
DO YOU FIND THAT NURSE CHARLOTTE ROBERTS BREACHED THE STANDARD OF PROFESSIONAL CARE REQUIRED OF HER IN ADMINISTERING THE PRE-OPERATION ENEMA?
 x Yes
 _____ No
DO YOU FIND THAT THE COLON OF MRS. LUCAS WAS PERFORATED?
 x Yes
 _____ No
DO YOU FIND THAT NURSE CHARLOTTE ROBERTS' CONDUCT PROXIMATELY CAUSED ANY INJURY TO PLAINTIFF?
 x Yes
 _____ No
DO YOU FIND THAT THE DEFENDANT (ST. FRANCES CABRINI HOSPITAL) IS RESPONSIBLE FOR ANY DAMAGES SUSTAINED BY THE PLAINTIFF?
 x Yes
 _____ No
(If YES, then continue. If NO, then STOP.)
WE AWARD THE PLAINTIFF DAMAGES AS FOLLOWS:
 $ 300,000"
*1002 Defendant appealed and the Louisiana Patients' Compensation Fund intervened in the appeal since they are legally obligated to pay part of plaintiff's recovery since defendant is a qualified health care provider under La.R.S. 40:1299.41 et seq.
Defendant asserts the following specifications of error:
(1) The verdict of the jury was manifestly erroneous, and not in accordance with the law and the evidence;
(2) Plaintiff failed to prove an injury;
(3) Plaintiff failed to prove by expert testimony or otherwise, as required by law and jurisprudence, that Nurse Charlotte Roberts was not a competent and experienced Registered Nurse;
(4) Plaintiff failed to prove by a preponderance of evidence that Nurse Charlotte Roberts was negligent or fell below the standard of care in giving the plaintiff a Fleet's enema;
(5) Plaintiff failed to prove by a preponderance of evidence that any injury or damage was sustained by plaintiff as a result of Nurse Charlotte Roberts having given her the Fleet's enema, and failed to establish a causal connection between the giving of the enema and plaintiff's subsequent colostomy;
(6) The trial judge erred in giving a jury charge on the doctrine of Res Ipsa Loquitur, since that rule of evidence should not have applied under the facts and circumstances of this case;
(7) The trial judge erroneously failed to direct a verdict in favor of the defendant at the close of the plaintiff's evidence and at the close of defendant's evidence; and
(8) Alternatively, defendants contend that the amount of the award by the jury was grossly excessive.

LAW
The ultimate issue in this case is whether Nurse Roberts was guilty of negligence such that her employer, defendant, can be held liable for the alleged injury suffered by the plaintiff.
In cases where plaintiff's recovery is founded on allegations of negligence, the pertinent inquiries are: whether defendant's conduct was a cause-in-fact of the injury, whether the defendant owed plaintiff a legal duty which encompassed the particular risk of harm to which plaintiff was exposed, whether defendant breached this legal duty, and whether plaintiff sustained damages. Brady v. State, Through Louisiana Health and Human Res. Admin., 525 So.2d 102 (La.App. 3 Cir.1988), writ den., 525 So.2d 1046 (La.1988); Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984).
Plaintiff alleges in her petition that as a result of a perforation of her colon she suffered a colostomy. The jury specifically, by its answers to the special jury verdict form, found that plaintiff did have a perforation of her colon. Defendant contends that this finding is in error.
We find that the jury could have reasonably found that there was a perforation in plaintiff's rectum or colon resulting from the enema despite the lack of direct evidence.
Dr. Texada made statements to both Dr. Lewis and his assistant, Pamela Johnson, during his operation which indicated that he saw retroperitoneal air in plaintiff's pelvic area. Dr. Texada's written report of the surgery also shows he found the presence of retroperitoneal air in plaintiff's pelvic area. Furthermore, Dr. Knoepp and Dr. Walkins accepted Dr. Texada's finding regarding the presence of retroperitoneal air, stating at trial that Dr. Texada was an excellent and trusted surgeon.
It is true that Dr. Texada looked for the source of the retroperitoneal air during the surgery and could not find its etiology. Dr. Walkins later did a proctoscopy and found no perforation of the rectum or colon. Dr. Knoepp also looked during the proctoscopy and testified that he found nothing unusual. However, Dr. Walkins stated in his testimony that though he saw no "obvious injury," this does not mean that there was no injury. Dr. Walkins further stated that he had no explanation *1003 for the presence of the air other than a perforation of the rectum or colon.
Where proof of any essential fact is to be made using only circumstantial evidence, that evidence taken as a whole must exclude other reasonable hypotheses with a fair amount of certainty, though it need not negate all possible hypotheses. Landry v. State Dept. of Transp., 497 So.2d 743 (La. App. 3 Cir.1986), writ den., 501 So.2d 234 (La.1987). Compare, Cangelosi v. Our Lady of the Lake Regional Medical Center, ___ So.2d ___ (La.1990), (on rehearing) rendered on April 20, 1990 and bearing Number 89-C-1093 on the Docket of the Louisiana Supreme Court. In light of the evidence discussed, supra, along with the fact that a colostomy was performed on the plaintiff and remained in place for eight months, we cannot say that the jury was manifestly wrong in finding that plaintiff had sustained a perforation of the colon which resulted in the colostomy.
The jury also specifically found that the enema was a cause-in-fact of the injury. We cannot say that the jury was manifestly in error or clearly wrong in this finding. Though the evidence was again, purely circumstantial, it excluded every other reasonable hypothesis with a fair degree of certainty. According to Dr. Lewis, Dr. Texada's anesthesiologist, Dr. Texada stated, during his surgery, that there had to be a posterior perforation and that the enema was the only reason he knew of that would have caused the perforation. Dr. Walkins also stated that there could be no explanation for the presence of the air other than a perforation of the rectum or colon. He further stated that he had no explanation for the air other than perforation by the enema. Neither Dr. Texada nor Dr. Walkins offered any other explanation for the air. Dr. Knoepp did give alternative reasons for the retroperitoneal air, but he did not say these reasons were likely, nor did he present any explanation why plaintiff would have this problem. Rather, he testified that plaintiff had no prior history of any of the things which would cause retroperitoneal air.
Next, we must decide whether the duty owed by the defendant to the plaintiff encompassed the risk of harm encountered by the plaintiff, and whether there was a breach of that duty.
In Hunt v. Bogalusa Community Medical Center, 303 So.2d 745 (La.1974), the Louisiana Supreme Court set out the duty of a hospital:
"A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control." Hunt v. Bogalusa Community Medical Center, 303 So.2d 745, at page 747 (La.1974).
See also, Lejeune v. Rayne Branch Hosp., 556 So.2d 559 (La.1990).
In the case before us, however, unlike in Hunt or Lejeune, the evidence shows no act of omission or commission, such as to constitute actionable negligence on the part of the defendant itself, unless Nurse Roberts was negligent in her care of plaintiff, which would create liability on the part of defendant. Daniel v. St. Francis Cabrini Hospital, Etc., 415 So.2d 586 (La.App. 3 Cir.1982).
Nurses who undertake to perform medical services are subject to the same rules relating to duty of care and liability as are physicians in their performance of professional services. Belmon v. St. Francis Cabrini Hosp., 427 So.2d 541 (La.App. 3 Cir.1983); Butler v. Louisiana State Board of Education, 331 So.2d 192 (La. App. 3 Cir.1976), writ refused, 334 So.2d 230 (La.1976); Harris v. State, Through Huey P. Long Memorial Hospital, 371 So.2d 1221 (La.App. 3 Cir.1979), affirmed, 378 So.2d 383 (La.1979).
There is no doubt that the legal duty owed by Nurse Roberts to plaintiff encompasses the risk encountered by plaintiff. However, defendant contends that plaintiff failed to prove that Nurse Roberts breached this duty. Plaintiff testified that *1004 Nurse Roberts gave her the enema while plaintiff was standing on the floor leaning across the bed. Nurse Roberts testified that she does not remember the position of plaintiff. Dr. H. Lamar Boise, an expert witness called by defendant, testified that bending over a bed is not a recommended position, and not one that he would employ. Furthermore, the box from which Nurse Roberts obtained the enema gave directions which stated that the position used should be either a left side position or a knee-chest position. Both plaintiff and her husband testified that the enema hurt and burned the plaintiff. From this evidence, we cannot say that the jury was clearly wrong in finding that Nurse Roberts breached her duty of care.
Defendant next contends that the trial judge erred in giving the jury an instruction on res ipsa loquitur.
On rehearing, in the case of Cangelosi v. Our Lady of the Lake Regional Medical Center, supra, the Louisiana Supreme Court, in reversing its previous ruling, discussed the principle of res ipsa loquitur in a medical malpractice case, and the standard which the trial judge should employ in deciding whether a res ipsa loquitur instruction should be given. The Court, in recognizing that res ipsa loquitur is a rule of circumstantial evidence, explained the use for the doctrine as follows:
"Negligence on the part of the defendant may be proved by circumstantial evidence alone when that evidence establishes, more probably than not, that the injury was of a kind which ordinarily does not occur in the absence of negligence, that the conduct of the plaintiff or of a third person was sufficiently eliminated by the evidence as a more probable cause of the injury, and that the indicated negligence was within the scope of the defendant's duty to the plaintiff. Restatement, supra, § 328D. Although the fact that an accident has occurred does not alone raise a presumption of the defendant's negligence, the doctrine of res ipsa loquitur (the thing speaks for itself) permits the inference of negligence on the part of the defendant from the circumstances surrounding the injury. S. Speiser, Res Ipsa Loquitur § 1:1 (1972). The doctrine of res ipsa loquitur involves the simple matter of a plaintiff's using circumstantial evidence to meet the burden of proof by a preponderance of the evidence. McCormick on Evidence § 342, at 966-67 (E. Cleary 3d ed. 1984). The doctrine merely assists the plaintiff in presenting a prima facie case of negligence when direct evidence is not available. J. Lee & B. Lindahl, supra, § 1522 n. 4. The doctrine permits, but does not require, the trier of fact to infer negligence from the circumstances of the event. McCormick on Evidence, supra, § 342, at 967; Boudreaux v. American Insurance Co., [262 La. 721, 264 So.2d 621 (1972)] supra; Larkin v. State Farm Mutual Automobile Insurance Co., [233 La. 544, 97 So.2d 389 (1957)] supra. (Footnotes omitted.)
* * * * * *
Use of the doctrine of res ipsa loquitur in a negligence case, as in any case involving circumstantial evidence, does not relieve the plaintiff of the ultimate burden of proving by a preponderance of the evidence all of the elements necessary for recovery. J. Wigmore, supra, § 2509. When all the evidence is in, the question for the jury is whether the preponderance of the evidence is with the plaintiff. Larkin v. State Farm Mutual Automobile Insurance Co., supra; Sweeney v. Erving, 228 U.S. 233 [33 S.Ct. 416, 57 L.Ed. 815] (1913)." (Footnotes omitted.) Cangelosi v. Our Lady of the Lake Regional Medical Center, ___ So.2d ___, at page ___ (La.1990). (Footnotes omitted.)
The Court then went on to set out the standard to be used by the trial court in deciding whether to instruct the jury on res ipsa loquitur:
"The doctrine of res ipsa loquitur is applied after all of the evidence has been presented. King v. King, 253 La. 270, 217 So.2d 395 (1968). The trial judge initially determines whether the jury *1005 could reasonably infer from the circumstances that the plaintiff's injury was caused by the negligence of the defendant. If the judge determines that reasonable minds could reach different conclusions, it is the function of the judge to instruct the jury on the doctrine, and it is the function of the jury to decide whether to draw the inferences or not. Restatement, supra, § 328D(2), comment 1; W. Prosser & W. Keeton, supra, § 39, at 243.
Thus, the standard to be applied by the trial judge in deciding whether to instruct the jury on res ipsa loquitur is the same standard used in deciding whether to grant a directed verdict, namely, whether the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable men could not arrive at a contrary verdict. Breithaupt v. Sellers, 390 So.2d 870 (La. 1980); 9 C. Wright & A. Miller, Federal Practice and Procedure, § 2524, at 545 (1971). If reasonable minds could reach different conclusions on whether the defendant's negligence caused the plaintiff's injury, then the judge must present the issue to the jury and instruct the jury on the doctrine of res ipsa loquitur." Cangelosi v. Our Lady of the Lake Regional Medical Center, ___ So.2d ___, at page ___ (La.1990). (Footnotes omitted.)
Under Cangelosi, in order for a plaintiff to utilize the doctrine of res ipsa loquitur, he must show (1) that the injury is one that does not ordinarily occur in the absence of negligence; (2) that the evidence sufficiently excludes the inference of his own responsibility or the responsibility of others besides the defendant in causing the accident; and (3) that the defendant's negligence falls within the scope of his duty to the plaintiff. Cangelosi v. Our Lady of the Lake Regional Medical Center, supra, at pages ___ - ___.
In the case at bar, the body of proof discounts other possible causes, than that of the negligence of Nurse Roberts, and would allow a conclusion, by the jury, that the injury was more likely than not caused by Nurse Roberts' negligence. See the discussion, supra, concerning the evidence presented in this case. The plaintiff does not have to eliminate completely all other possible causes, but only sufficiently exclude her own negligence and the negligence of a third person. Cangelosi v. Our Lady of the Lake Regional Medical Center, supra, at page ___. The plaintiff sufficiently met this burden in this case.
Further, plaintiff has also shown, as discussed supra, that Nurse Roberts had a duty to her which was breached. We note that this duty is further shown by the fact that the instrumentality which caused the injury was in the exclusive control of Nurse Roberts. "Exclusive control" of the injury causing instrumentality is not an indispensable element of a res ipsa loquitur case, but rather, it simply helps establish a duty. Cangelosi v. Our Lady of the Lake Regional Medical Center, supra, at page ___.
Lastly, we consider it well within common experience that properly given enemas do not cause perforations of the colon. In the absence of negligence, the giving of an enema will not commonly cause such an injury.
In light of the evidence presented, we do not find the trial judge was manifestly wrong or clearly in error in giving the res ipsa loquitur instruction to the jury because, based on the evidence, the jury could reasonably infer from the circumstances that the plaintiff's injury was caused by Nurse Roberts' negligence. To quote the Supreme Court once more, "If the judge determines that reasonable minds could reach different conclusions, it is the function of the judge to instruct the jury on the doctrine, and it is the function of the jury to decide whether to draw the inference or not." (Emphasis added.) Cangelosi v. Our Lady of the Lake Regional Medical Center, supra, at page ___.
Simply because the plaintiff in this case put on some evidence to attempt to *1006 prove the negligence of Nurse Roberts, does not deprive her of the natural inference of the facts. Plaintiff "should not be denied the benefit of any natural inferences which may arise from the occurrence of the accident merely because he does not care to rest his chances upon that inference alone." Malone, Res Ipsa Loquitur and Proof by InferenceA Discussion of the Louisiana Cases, 4 La.L.Rev. 70, 94 (1941). "When all the evidence is in, the question is still whether the preponderance is with the plaintiff." Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621, at page 628 (1972). Accord, Cangelosi v. Our Lady of the Lake Regional Medical Center, supra. We shall never know whether the jury in this case considered the natural inferences (i.e., that an enema, if given properly, does not cause an injury to the colon) presented by the circumstances of this case. Nevertheless, such consideration would not have been impermissible. We note that defendant presented no evidence that Nurse Roberts was not negligent.
For these reasons, we find that, under the evidence in this case the trial judge did not err in giving the jury the res ipsa loquitur instruction.
The defendant next contends that the trial judge erred in failing to direct a verdict in favor of defendant at the close of plaintiff's case and at the close of defendant's evidence.
A motion for a directed verdict should be granted in a jury trial when, after considering all evidentiary inferences favorable to the movant's opponent, it is clear that the facts and inferences redound so overwhelmingly in favor of granting the verdict, that reasonable jurors could not arrive at a contrary conclusion. Llorence v. Natchitoches Parish School Bd., 529 So.2d 479 (La.App. 3 Cir.1988), writ den., 532 So.2d 176 (La.1988); Moore v. Aetna Cas. & Sur. Co., 454 So.2d 1273 (La.App. 2 Cir.1984). The trial judge has much discretion in determining whether or not to grant a directed verdict. Johnson v. Patcraft Mills, Inc., 486 So.2d 1178 (La.App. 3 Cir. 1986), writ den., 489 So.2d 252 (La.1986).
After a careful review of the record, and in view of the evidence and applicable law, it is clear that the trial judge was correct in denying a directed verdict in favor of defendant after the close of plaintiff's case, as well as after the close of all the evidence.
Lastly, the defendant and intervenor argue that the award of $300,000.00 to plaintiff is excessive. The record shows that the plaintiff had her colostomy for about eight months. The colostomy caused her considerable embarrassment and pain and discomfort. It required plaintiff to obtain outside help to care for herself and her home. Additionally, it caused plaintiff to spend more time in the hospital than would have otherwise been necessary and to undergo surgical procedures involving the colostomy.
After a close review of the evidence in the record, we cannot say that the jury abused its much discretion in its award of damages. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are taxed to defendants-appellants.
AFFIRMED.