11 DECUIR, Judge.
This is a tort suit filed by Judy George to recover damages for the alleged killing of a pair of breeding emus by a dog belonging to defendants, Paul and Lisa Pigno. The trial court rendered judgment in favor of the defendants, and George lodged this appeal.
FACTS
This classic “whodunit” begins with Judy George’s purchase of two breeding emus in March of 1993. George, a school bus driver on disability retirement, purchased the emus as an investment using $8,500.00 of her savings. At the time of her purchase, there was a ready market for the offspring of emus. George had a cage built beside her home to house her emus and testified that the pair were exhibiting breeding behavior, though they had not actually bred at the time of their demise.
|20n the morning of September 30, 1993, George went out to the pen to see her emus. To her horror the birds were laying on the ground. Inside the locked pen was a dog with a bloody snout. Upon recovering from her shock, George called the Sheriffs Department and Animal Control. The deputies and employees of Animal Control opened the locked gate and retrieved the alleged killer dog.
An investigation by George and the deputies quickly resolved the “locked room” mystery. There was clear evidence of fresh digging outside of the pen and a hole large enough for the suspect dog to enter the pen. *188 Examination of the birds revealed damage to the necks of both birds resembling teeth marks. Animal Control took the suspect dog away. He was later claimed by the Pignos.
In the meantime, George, seeking to recoup some of her lost investment, attempted to salvage the meat from her slain emus. Unfortunately, the excited state of the emus at the time of their demise rendered the meat too full of blood to be marketable.
While to the casual eye the solution to this “whodunit” might appear obvious, the parties hired men experienced in the raising of emus to ferret out the truth. George engaged the services of Harris Desormeaux, the owner and operator of the largest emu farm in Louisiana, and qualified him as an expert at trial. Desormeaux, relying on his experience raising approximately five thousand emus in pens, concluded that the dog panicked the emus from outside the pen causing them to damage themselves and die. Thereupon, he concluded the dog dug his way into the pen and feasted on his kill. He indicated that he had seen this same scenario played out in the past.
The Pignos engaged the services of Ronald Pesson, a plumbing contractor who raised exotic animals and felt that emus “was ugly enough to raise.” Pesson was not offered as an expert by the Pignos, but the trial judge indicated that he felt Pesson was an expert. Relying on his nineteen years experience raising emus in a pasture, Pesson | ^concluded that the emus had fought between themselves and, in the course of combat, mortally wounded each other.
The trial court concluded that the circumstantial evidence presented by George was not sufficient to prove by a preponderance of the evidence that the Pignos’ dog killed her emus. George lodged this appeal.
RECOGNITION OF PESSON AS EXPERT
By her first assignment, George alleges that the trial court erred in recognizing Pes-son as an expert without first allowing appellant an opportunity to traverse the witness as to his qualifications, and in recognizing him despite his lack of experience raising emus from chicks to adulthood.
Our review of the record indicates that despite the trial court’s statement in open court recognizing Pesson as an expert, appellant did not object to that recognition. In fact, counsel for appellant participated in the trial court’s effort to elicit Pesson’s opinion and sought that opinion in his own questioning as well. It is well established that an appellate court may only address objections actually raised in the trial court. Horton v. McCrary, 92-1123 (La.App. 3 Cir. 7/30/93); 620 So.2d 918; reversed in part on other grounds 93-2315 (La.5/12/94); 635 So.2d 199. Accordingly, given the trial court’s wide discretion in qualifying experts, George’s participation in eliciting the testimony and the failure to make a timely objection, we decline to consider the issue further.
WEIGHT OF EVIDENCE
George’s remaining three assignments, offered in the alternative, may be summarized in the blanket allegation that the trial court’s ruling is manifestly erroneous.
The standard of review for a trial court’s finding of fact is manifest error. Stobart v. State Through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993). This 14court has a constitutional duty to review facts. Ambrose v. New Orleans Police Dept. Ambulance Serv., 93-3099, 93-3110, 93-3112 (La.7/5/94); 639 So.2d 216. In fulfilling our constitutional obligation, we must review the record in its entirety and not just find some evidence to support or controvert the fact finder’s determinations. Stobart, 617 So.2d 880. After review of the entire record, the issue we should resolve is whether the fact finder’s conclusion is a reasonable one, not whether it is right or wrong. Id.
In the present case, George qualified De-sormeaux, the largest emu farmer in the state, as an expert witness. Her expert raised over 5000 emus to adulthood paired in pens. The Pignos’ offered Pesson, a plumber, who had been raising exotic animals as a sideline for many years. The plumber had only raised emus in a pen for a couple of *189 months, and had only raised a few to adulthood.
Desormeaux opined that the emus were panicked by the Pignos’ dog until they damaged themselves and died. Whereupon, the dog dug into the pen and chewed their bodies. He testified that he has had penned emus panicked by dogs on his farm and actually had birds damaged in this manner. Furthermore, he stated that he “never, never” heard of two emus fighting until both were dead. He also indicated that emus who are “bonded” to each other through extended proximity in a pen do not fight or exhibit aggressive behavior toward each other. Finally, his unequivocal opinion was that the birds did not kill each other.
Pesson, not having been qualified as an expert by the Pignos, offered opinion testimony at the request of the trial court. Pes-son opined, when pressed by the court, that the emus might have fought with each other striking their throats and then running around until they died. He also testified that his emus were not afraid of dogs, but reminded the court that he keeps emus in a pasture with other exotic animals and not in pens. Moreover, Pesson indicated that he has never actually had an adult emu die in a pen, nor has he ever had one emu cause the death of another.
|sNo doubt constrained by its reading of Landry v. State Department of Transportation, 497 So.2d 743 (La.App. 3 Cir.1986), writ denied 501 So.2d 234 (La.1987), the trial court found that George had failed to prove by a preponderance of the evidence that the Pignos’ dog caused the death of her emus. We must respectfully disagree.
Landry provides that “[W]here proof is to be made using only circumstantial evidence, that evidence taken as a whole, must exclude other reasonable hypotheses with a fair amount of certainty, though it need not negate all possible hypotheses.” Id. at 745, citing Lacey v. Louisiana Coca-Cola Bottling Company, Ltd., 452 So.2d 162, 163 (La.1984). The trial court apparently read this very narrowly and in fact required George to exclude all possible hypotheses. The record clearly indicates that the hypothesis of De-sormeaux regarding panicked birds was substantiated by actual experience and its possibility was acknowledged by Pesson. On the other hand Pesson’s hypothesis of mutual mortal combat, given in the most equivocal of testimony, was expressly disavowed by De-sormeaux, and Pesson acknowledged that he had never had the actual experience either. Under these circumstances, we do not find Pesson’s hypothesis to be reasonable. Therefore, we find the hypothesis put forth by Desormeaux excludes all other reasonable hypotheses though it does not negate all possible hypotheses. Accordingly, the trial court’s ruling to the contrary is manifestly erroneous.
DAMAGES
It is well settled that it is the plaintiffs burden to prove with legal certainty every item of damage claimed. Keaty v. Moss Motors, Inc., 93-1452, 93-1453 (La. App. 3 Cir. 6/1/94); 638 So.2d 684. Plaintiff’s own uncorroborated personal estimate is insufficient. Parker v. Dubus Engine Co., 563 So.2d 355 (La.App. 3 Cir.1990).
| sGeorge first asks the court to award damages for the loss of the emus themselves. George paid $8,500.00 for the pair of emus four months prior to their demise. She testified that she got a good price because the birds had crooked necks. Desormeaux confirmed that the quality of the specimen would have an effect on price depending on the time of sale. Desormeaux produced receipts for the sale of emus during the year of George’s loss that ranged from $16,000.00 to $29,000.00 a pair. However, Desormeaux also indicated that the industry peaked about that time and that he now gets about $600.00 a pair for processing. Based on this evidence, we find an award of $12,000.00 for the emus themselves is appropriate given their defects and allowing for four months appreciation.
George next seeks damages for the costs of building a pen for the emus and for feeding them for four months. George presented no evidence in support of these charges other than her uncorroborated personal estimate. As we noted previously, this is insufficient to support an award of dam *190 ages. Accordingly, we find plaintiff failed to prove damages for these items.
George also claims loss of income from the sale of chicks. The record indicates that this income could range from $0.00 to $40,000.00. Desormeaux noted specifically that there is no guarantee that emus will breed and lay, though there is a 70% chance that they will breed with a 80-90 % chance that the chicks will survive. We find no specific evidence regarding the likelihood of these particular birds successfully breeding. He also indicated that if they do lay, one might expect at least eight viable hatchlings per season. During the period in question, emu prices rose steeply and declined just as steeply. Desormeaux indicated prices from $6,000.00 a pair for breeding stock chicks to $600.00 a pair for chicks for processing. Given the uncertainty of the nature and fluctuations of the market, we will assume that George’s birds would have produced eight chicks a year for the two breeding seasons in ^question, and that the chicks could have been sold for processing for $600.00 a pair. Accordingly, George is entitled to $4,800.00 for income lost.
Finally, George seeks to recover expert witness fees for the testimony of Desor-meaux. The record supports such an award. Accordingly, George is awarded reasonable expert witness fees in the amount of $600.00.
CONCLUSION
For the foregoing reasons the judgment of the trial court is reversed.
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment be entered in favor of plaintiff-appellant Judy George as follows:
1) $12,000.00 together with legal interest from date of demand for the loss of two emus;
2) $4,800.00 together with legal interest from date of demand for lost income; and
3) $600.00 in expert witness fees for Harris Desormeaux.
All costs of this appeal are assessed against defendants-appellees, Paul and Lisa Pigno.
REVERSED AND RENDERED.