# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-1523

**SHIRLENE AND LARRY THIBODEAUX**

**VERSUS**

**LAFAYETTE GENERAL SURGICAL HOSPITAL, LLC**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C20091160
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of John D. Saunders, Billy Howard Ezell, and David E. Chatelain,[*] Judges.

**AFFIRMED.**

**Nicholas Gachassin, Jr.**
**Gachassin Law Firm**
**P. O. Box 80369**
**Lafayette, LA 70598-0369**
**(337) 235-4576**
**Counsel for Defendant/Appellee:**
**Lafayette General Surgical Hospital, LLC**

**Sera Hearn Russell  III**
**Attorney at Law**
**P. O. Box 53866**
**Lafayette, LA 70505-3866**
**(337) 237-7171**
**Counsel for Plaintiffs/Appellants:**
**Shirlene Thibodeaux**
**Larry Thibodeaux**

---

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Julie Savoy**
**Gachassin Law Firm**
**P. O. Box 80369**
**Lafayette, LA 70598-0369**
**(337) 235-4576**
**Counsel for Defendant/Appellee:**
**Lafayette General Surgical Hospital, LLC**

**SAUNDERS, Judge.**

This is a medical malpractice case wherein the plaintiffs, wife and husband, brought their claims against a hospital. The wife underwent an initial surgery, had complications, then underwent a second surgery on the same day to attempt to alleviate those complications. The plaintiffs claim that they suffered damages from a jarring transfer of the wife from the surgical table to a gurney following her initial surgery and that the recovery room nursing staff's delay in notifying the surgeon of complications in the wife's initial surgery led her to have permanent Complex Regional Pain Syndrome (CRPS).

The plaintiffs filed a complaint with the Louisiana Patient's Compensation Fund, and a medical review panel was formed. According to the unanimous opinion of the medical review panel, the hospital, through its nurses, did not breach the standard of care that it owed to the plaintiffs. Further, one of the members of the review panel opined that the wife's outcome resulted from the complications that occurred in the initial surgery and not from any action or inaction by the hospital nursing staff.

The plaintiffs then filed suit against the hospital for medical malpractice. The hospital filed a motion for summary judgment based on what it alleged was the plaintiffs' lack of evidence that the hospital had breached the standard of care it owed to the plaintiffs and on the plaintiffs' lack of evidence that any breach was causally linked to the damages suffered by them. The trial court, without written reasons, granted the summary judgment. The plaintiffs appeal. We affirm.

**FACTS AND PROCEDURAL HISTORY:**

On July 5, 2006, Shirline Thibodeaux (Ms. Thibodeaux) was admitted to Lafayette General Surgical Hospital, LLC (LGSH) for an elective surgical procedure,

an anterior cervical discectomy at the C5-6 and C6-7 levels of the spine. The surgery was an attempt to relieve neck pain, left arm pain, and weakness in her left arm and hand. The surgery was performed by Dr. Ilyas Munshi, a neurosurgeon.

Following her surgery, Ms. Thibodeaux was transferred from the surgical table to a gurney to be taken to the recovery room, then to a room located on the floor of the hospital. According to Ms. Thibodeaux, when she was transferred from the surgical table to the gurney she felt a jar and significant pain. Ms. Thibodeaux contended that she notified hospital personnel immediately of this pain and that she was administered pain medication in the recovery room.

Ms. Thibodeaux's medical records indicate that she began showing signs of complications in the form of inability to move her left arm and hand and significant weakness in the grip of her left hand while in her hospital room. The floor nurse contacted Dr. Munshi and reported those complications to him. He later performed a second surgery to in an attempt to correct these complications. Unfortunately, these complications resulted in Ms. Thibodeaux having permanent CRPS.

According to Ms. Thibodeaux, LGSH's recovery room nurses were aware of her significant pain and were negligent in failing to notify Dr. Munshi in a timely fashion. Further, according to Ms. Thibodeaux, the jarring from her transfer from the surgical table to a gurney caused the complications, and the recovery room nurses' delay in notifying Dr. Munshi resulted in a loss of chance for successful recovery from those complications and a loss of consortium on behalf of her husband, Larry Thibodeaux.

On January 2, 2007, Ms. Thibodeaux and Larry Thibodeaux (the Thibodeauxs) filed a complaint with the Louisiana Patient's Compensation Fund. After going

through the medical review process, the medical review panel reached a unanimous opinion that LGSH had not breached the standard of care it owed to the Thibodeauxs.

On February 25, 2009, the Thibodeauxs filed suit against LGSH for medical malpractice. After some discovery was conducted, LGSH filed a motion for summary judgment. LGSH based its motion on its contention that the Thibodeauxs could not carry their burden to prove at trial that a breach of the applicable standard of care occurred or that there was a causal link between the Thibodeauxs' alleged damages and any alleged deviation from the applicable standard of care. The trial court granted LGSH's motion without written reasons. The Thibodeauxs timely filed this appeal alleging the following assignments of error:

**ASSIGNMENTS OF ERROR:**

1.    The trial court erred in accepting as true the facts set forth in the LGSH's motion for summary judgment and gave no weight whatsoever to the affidavit of Ms. Thibodeaux or Dr. Munshi's deposition testimony.

2.    The trial court erred in concluding that there was no evidence of a change in Ms. Thibodeaux's outcome despite Dr. Munshi's deposition testimony entered into the record.

**ASSIGNMENT OF ERROR NUMBERS ONE AND TWO:**

In their first assignment of error, the Thibodeauxs allege that the trial court erred in accepting as true the facts set forth in the LGSH's motion for summary judgment and giving no weight whatsoever to the affidavit of Ms. Thibodeaux or Dr. Munshi's deposition testimony. In their second assignment of error, the Thibodeauxs alleged that the trial court erred in concluding that there was no evidence of a change in Ms. Thibodeaux's outcome despite Dr. Munshi's deposition testimony entered into the record. Given that both assignments of error are directed towards the trial court granting a motion for summary judgment and the appropriate standard of review

applicable to a motion for summary judgment, we will address whether the trial court properly granted LGSH's motion for summary judgment under one heading.

Summary judgments are subject to a de novo review. *Covington v. McNeese State Univ.*, 08-505 (La.App. 3 Cir. 11/5/08), 996 So.2d 667, *writ denied*, 09-69 (La. 3/6/09), 3 So.3d 491. "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). A motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art. 966(C)(2).

In this case, the Thibodeauxs filed suit against LGSH, alleging that through its nurses and employees, LGSH's actions were negligent and fell below the standard of care and those actions caused damage to them. The Thibodeauxs have the burden to prove these allegations at trial. *See Smith v. State through Dep't., Res. Admin.*, 523 So.2d 815 (La.1988). Therefore, LGSH, as movant for the motion for summary judgment, does not have the burden to "negate all essential elements of the [Thibodeauxs'] claim." La.Code Civ.P. art. 966(C)(2). Instead, LGSH merely has

4

to point out a lack of support for an essential element of the Thibodeauxs' claim. Thereafter, the burden is then on the Thibodeauxs to show some support that they can satisfy their evidentiary burden on that element. If they cannot, there is no genuine issue of material fact, and the motion for summary judgment should be granted.

> A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. A determination of whether a hospital has breached the duty of care it owes to a particular patient depends upon the circumstances and the facts of that case.

*Hunt v. Bogalusa Cmty. Med. Ctr.*, 303 So.2d 745, 747 (La.1974).

LGSH based its motion for summary judgment on two contentions: that the Thibodeauxs failed to produce sufficient admissible evidence showing that the applicable standard of care was breached and that the Thibodeauxs failed to show that there was a causal link between their damages and any alleged deviation from the applicable standard of care. If LGSH can show either of its contentions to be accurate and the Thibodeauxs fail to put forth sufficient evidence that they can satisfy their evidentiary burden on that element, then summary judgment is appropriate.

LGSH submitted, *inter alia*, the unanimous opinion of the medical review panel to support its contention that it did not breach the applicable standard of care. It states as follows:

> The evidence does not support the conclusion that [LGSH, through its nursing staff] failed to meet the applicable standard of care as charged in the complaint.

This opinion is based upon the following:

> The patient's recovery room course was not unusual, and the pain medication administered was reasonable in light of the pre-op symptoms. After the patient arrived to

5

the floor, and after a nursing assessment demonstrated a new motor deficit, Dr. Munshi was immediately notified. Therefore, the nursing care was professional and adequate.

The Thibodeauxs countered with the affidavit of Ms. Thibodeaux. Her affidavit states, in pertinent part:

5.    When she got to the recovery room, she was still groggy but complained of severe pain;

6.    She was given Morphine (she does not know how much), but this did not relive the pain;

7.    She recalls getting at least one additional unit of Morphine;

8.    She was eventually transferred to a "room[]"[;]

9.    She advised the nurses in the room of her condition;

10.    The nurses then advised her that they had discussed this among themselves and that they would call Dr. Munshi (her neurosurgeon);

11.    Dr. Munshi was eventually called.

Additionally, the Thibodeauxs cite the deposition of Dr. Munshi. In his deposition, Dr. Munshi clearly indicated that, given the records he reviewed, he would have liked to have been notified earlier that Ms. Thibodeaux was suffering difficulties related to pain and strength in her upper, left extremity.

This set of facts arguably creates a genuine issue of material fact regarding whether LGSH breached the standard of care it owed to the Thibodeauxs with respect to the length of time it took the LGSH nursing staff to notify Dr. Munshi of Ms. Thibodeaux's complications. However, we need not reach such a conclusion regarding the delay of notifying Dr. Munshi because the record is completely devoid of evidence that causally links that potential breach to the damages suffered by Ms. Thibodeaux. The only evidence in the record that reaches a definite conclusion on

6

the causal link between the delay and the Thibodeauxs' damages is the affidavit of Dr. John R. Clifford, a neurosurgeon who has been practicing since 1976. After having viewed all of Ms. Thibodeaux's medical records, the Thibodeauxs' complaint, and Dr. Munshi's deposition, Dr. Clifford stated the following in his affidavit:

> It is my opinion that all of Ms. Thibodeaux's problems are due to the initial surgery on July 5, 2006, not to anything that the nurses did or did not do in caring for Ms. Thibodeaux subsequent to the surgery. It is my opinion that the patient would have had the same subsequent problems even if Dr. Munshi had re-operated sooner.

> It is my opinion that Ms. Thibodeaux exhibits the symptoms of central cord syndrome caused by problems from the initial surgery on July 5, 2006; the outcome would not have been different even had Dr. Munshi re-operated sooner.

The Thibodeauxs respond by referencing the deposition of Dr. Munshi. However, our review of Dr. Munshi's deposition indicates that he spoke to a causal link between the damages suffered by the Thibodeauxs and any potential breach of the standard of care by LGSH on one occasion. On that occasion, he stated:

> Q     Doctor, do you believe that if you had been notified earlier, you could have given Ms. Thibodeaux a better chance of recovery?

> A     She may still have had the problems she's had, but if somebody develops an acute onset of neck pain, weakness in the recovery room or soon after surgery, the surgeon needs to be notified and the surgeon needs to take care of whatever needs to be taken care of, meaning obtaining a CT scan, re-operating, whatever needs to be done[.] I would have loved to have known sooner.

This excerpt of testimony is clear. While Dr. Munshi would have liked to have been notified earlier of Ms. Thibodeaux's complications, he cannot say that earlier notification would have changed her result. In order to recover for medical malpractice, the Thibodeauxs must be able to prove by a preponderance of the evidence that this delay is causally linked to their damages. Here, Dr. Munshi simply stated that Ms. Thibodeaux may have had the same problems without the delay. Thus,

7

it is clear, that this testimony does not rise to the level that the Thibodeauxs must prove at trial. Therefore, Dr. Clifford's opinion on causation is uncontested and is the only evidence in the record available to this court on the issue of causation with respect to the delay in notification of Dr. Munshi. His opinion, as stated above, is that it was the first surgery that caused the complications that led to the Thibodeauxs' damages. Accordingly, we find that there is no genuine issue of material fact regarding this essential element of the Thibodeauxs' claim for a loss of chance for a better outcome from Ms. Thibodeaux's surgery.

The Thibodeauxs did allege in their suit against LGSH that the jarring that Ms. Thibodeaux underwent when she was transferred from the surgical table to the gurney by LGSH employees caused her significant pain. The affidavit of Ms. Thibodeaux states, in pertinent part:

2.     [Ms. Thibodeaux] was conscious and aware of her move from the operating table to the gurney that would take her to the recovery room;

3.     During the move from the operating table to the gurney, she felt a jar and significant pain;

4.     She reported this immediately to the people attempting to move her;

While this is evidence of pain suffered by Ms. Thibodeaux, there is no indication in the record that this transfer caused Ms. Thidobeaux's permanent CRPS. To the contrary, as stated above, the only evidence in the record that speaks definitively on this issue is the affidavit of Dr. Clifford. He opines that the bone plug at C5-6 was indenting and impinging her spinal cord, and this impingement is what caused her permanent CRPS.

However, the question remains whether the Thibodeauxs have raised a genuine

issue of material fact as to a potential recovery from LGSH for the pain that she alleges she endured from the less than ideal transfer. Similar to our finding regarding the delay issue, when this court views the record on this issue, we find it clear that regardless of whether the alleged jarring transfer was a breach of the standard of care owed by LGSH to the Thibodeauxs, the level of pain that Ms. Thibodeaux endured just moments after her surgery is not an unexpected result. Ms. Thibodeaux reported a level of pain of 4 out of 10, a tolerable level, just after the transfer and transport to the recovery room. Moreover, Dr. Munshi testified to the following via deposition:

Q      After the [first] surgery, were you able to communicate with Ms. Thibodeaux to see how she was doing?

A      She was groggy. When I left the operating room, she was groggy. She had been extubated. I went and talked to the family at that time. She was not completely awake and completely alert, but she was groggy[,] and I know she was being extubated and she would be waking up at that time.

Q      Was there any problems that you were aware of at that moment in time with either her surgery or any other condition associated with the surgery?

A      No. Not from what I could tell.

This testimony indicates that Ms. Thibodeaux, even if she was experiencing some pain post surgery, was not experiencing pain at a level that was unusual directly following this type of surgery and the subsequent transfer from the surgical table to a gurney. Therefore, we find that the Thibodeauxs have failed to raise a genuine issue of material fact regarding whether the transferring action is causally linked to any damage suffered by them. As such, we affirm the trial court's judgment granting LGSH's motion for summary judgment.

**CONCLUSION:**

The Thibodeauxs raised two assignments of error. Both assignments allege that the trial court erred in granting LGSH's motion for summary judgment. Given that the standard of review for a motion for summary judgment is a de novo review of the record, we simply addressed whether the trial court properly granted LGSH's motion.

We found that the Thibodeauxs could not prove causation at the trial level regarding their claim for loss of chance for a better outcome of Ms. Thibodeaux's surgery because they put forth no evidence that causally linked that delay to any damages they suffered. Further, we found that the Thibodeauxs could not prove that the jarring that Ms. Thibodeaux endured when she was being transferred from the surgical table to a gurney caused them damages, as they produced no evidence that such an event could have caused the damages that occurred. As such, we affirm the trial court's judgment granting LGSH's motion for summary judgment All costs of this appeal are assessed to the Thibodeauxs.

**AFFIRMED.**