# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT


## 12-1242


**MACRO OIL COMPANY, INC., ET AL.**

**VERSUS**

**DEEP SOUTH PETROLEUM, INC., ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20114424
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN D. SAUNDERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Billy Howard Ezell, and Shannon J. Gremillion, Judges.


**AFFIRMED.**


**Steven Gerald Durio**
**Travis J. Broussard**
**Durio, McGoffin, Stagg & Ackermann**
**P. O. Box 51308**
**Lafayette, LA 70505-1305**
**(337) 233-0300**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 **Deep South Petroleum, Inc.**
 **Charles A. Fuselier, Jr.**

**Charles W. Dupuis**
**Joel Paul Babineaux**
**Olivia Smith Regard**
**Babineaux, Poche, Anthony**
**P. O. Box 52169**
**Lafayette, LA 70505-2169**
**(337) 984-2505**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Macro Oil Company, Inc.**
    **William H. McElligott**
    **Richard G. McElligott**

**SAUNDERS, Judge.**

This is a case where a dispute arose between two oil companies who had formed, and then sold, a separate entity with each comprising one-half of that formed entity. The plaintiff oil company's group sought a declaratory judgment that all claims against it could no longer be pursued for its alleged violations of a covenant not to compete that was part of newly formed entity's operating agreement.

The trial court granted the plaintiff oil company group's motion for summary judgment thereby granting its declaratory judgment. The defendant oil company's group filed this appeal. We affirm.

## FACTS AND PROCEDURAL HISTORY:

In March 2004, appellants, Deep South Petroleum, Inc., Charles W. Dupuis, and Charles A. Fuselier (Deep South) formed a new company with appellees, Macro Oil Company, Inc., Richard G. McElligott, and William H. McElligott (Macro). The new company formed was named United Fuels & Lubricants, L.L.C. (UFL), and it was organized in the State of Louisiana. Deep South and Macro each owned fifty percent of the membership interest in UFL.

In forming UFL, Deep South and Macro transferred their fuel distribution assets to UFL and signed UFL's operating agreement. Part of UFL's operating agreement was a covenant not to compete against UFL subscribed to by both Deep South and Macro.

On December 15, 2010, UFL sold its assets to Talen's Marine and Fuel, L.L.C. (Talen's). Also on that date, Deep South and Macro signed a release agreement stating that both "agree that neither has any claims against the other arising out of or in any way connected to their membership in UFL" and "to the

extent that Macro or Deep South has any such claims, the same are hereby waived, released, remitted and otherwise extinguished."

Thereafter, Deep South made demands against Macro, on behalf of UFL, related to Macro's alleged violations of the covenant not to compete in UFL's operating agreement. In order to obtain a declaration of rights and obligations under both the UFL operating agreement and the release agreement, Macro filed a petition for declaratory judgment, preliminary injunction, and permanent injunction on August 3, 2011. Macro then moved for summary judgment.

After completion of discovery, the trial court conducted a hearing resulting in a final judgment issued on July 27, 2012, granting Macro's motion for summary judgment. Deep South brought this appeal and is alleging four assignments of error.

**ASSIGNMENTS OF ERROR:**

1.    The trial court erred in finding that the Agreement released claims of UFL.

2.    The trial court improperly considered extrinsic evidence.

3.    The trial court erred by applying language of the UFL Operating Agreement.

4.    The trial court erred by failing to apply Article 3078 of the Civil Code.

**ASSIGNMENT OF ERROR NUMBERS ONE THROUGH FOUR:**

In each of its four assignments of error raised, Deep South contends that the trial court erred in some fashion so as its grant of Macro's motion for summary judgment was improper. Given that the applicable standard of review in this case and that each of the assignments of error is an argument seeking the same result, we will address all issues raised by Deep South under one heading.

> Summary judgments are subject to a de novo review. *Thibodeaux v. Lafayette Gen. Surgical Hosp.*, 09–1523 (La.App. 3 Cir. 5/5/10), 38 So.3d 544. "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by [La.Code Civ.P. art.] 969. The

procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). A motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

It is also important to be aware of the movant's and not-movant's burdens of proof. Though the burden of proof on a motion for summary judgment remains on the movant, the movant's burden changes contingent upon whether he or she will bear the burden of proof at trial on the matter that is the subject of the motion for summary judgment. *Johnson v. State Farm Ins.*, 08-1250 (La.App. 3 Cir. 4/1/09), 8 So.3d 808.

*Davis v. Country Living Mobile Homes, Inc.*, 11-471, pp. 2–3 (La.App. 3 Cir. 10/19/11), 76 So.3d 1248, 1249–50.

Louisiana Code of Civil Procedure Article 966(C)(2) states, in pertinent part:

The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

"Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith." La.Civ.Code art. 1983. "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. "The words of a contract must be given their generally prevailing meaning." La.Civ.Code art. 2047. "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to

3

the object of the contract." La.Civ.Code art. 2048. "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that render it ineffective." La.Civ.Code art. 2049. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050.

In the case before us, the trial court granted summary judgment based on its interpretation of two contracts. The first contract is an agreement between the members of UFL, namely Macro and Deep South. The second is UFL's operating agreement, specifically Article 16.1 of UFL's operating agreement.

On December 15, 2010, UFL sold its operating assets to Talen's. On that same date, Macro and Deep South executed an agreement. That agreement states (emphasis added):

> Whereas, Macro and Deep South are the sold members of United Fuels and Lubricants, L. L. C. ("UFL"), an Louisiana limited liability company;
>
> Whereas, Pursuant to that certain Bill of Sale and other related documents with Talen's Marine and Fuel, Inc. dated December 15, 2010, UFL, Macro and Deep South have agreed to sell all or substantially all of the Assets of UFL (the "Sale");
>
> Whereas, *Following the Sale, UFL will not conduct any operations or carry on any further business*, and Macro and Deep South intend to dissolve UFL;
>
> Now, therefore, Macro, Deep South and their respective principals hereby agree to the following:
>
> 1. Neither, Macro, Deep South, or any of their shareholders, officers, directors, members, managers, agents, employees or representatives will conduct any operations or engage in any business whatsoever in the name of or on behalf of UFL after the closing of the Sale, other than the collection of receivables and the payment of existing debt to Whitney National Bank and disbursement of net sale proceeds to the principals of UFL, without express written consent of each of Macro and Deep South;
>
> . . . .

4

2. In consideration of the dissolution contemplated hereby, Macro and Deep South acknowledge and agree that neither has any claims against the other arising out of or in any way connected to their membership in UFL, the operation of UFL and/or the relationship created thereby, and, *to the extent that Macro or Deep South has any such claims, the same are hereby waived, released, remitted and otherwise extinguished*.

The trial court read that agreement in conjunction with Article 16.1 of UFL's operating agreement. Article 16.1 is a covenant not to compete that was allegedly violated some time after Hurricanes Katrina and Rita by Macro. The pertinent language of Article 16.1 states, "this provision shall cease to apply upon the dissolution or cessation of business of the Company reserving to the Members any claims for damages resulting from any violations of this Article 16 occurring prior to and through the date of such dissolution or cessation of business."

The trial court's interpretation of the two documents was that when Macro and Deep South agreed that UFL "will not conduct any operations or carry on any further business" in the agreement between the parties, Article 16.1 of UFL's operation agreement ceased to apply upon "the . . . cessation of business" and any damages were now "reserved . . . to the Members." Next, the trial court reasoned that any claim for damages between Macro and Deep South had been "waived, released, remitted and otherwise extinguished" as stated in number two of the release agreement between Macro and Deep South.

Deep South first argues that their agreement with Macro does not compromise the claims of UFL. This is true. The language of the agreement between Deep South and Macro does not compromise *UFL's* claims. Rather, the trial court reasoned, and we agree, that the language of UFL's operating agreement does so when it clearly states that Article 16.1 ceases to apply upon "cessation of business." Therefore, given that UFL has ceased doing business, any claims it had against Macro are extinguished per its operating agreement.

5

Deep South next takes issue with the trial court considering UFL's operating agreement as "extrinsic evidence." This issue before the trial court was not solely to interpret the agreement between Macro and Deep South. It was to determine if there was a genuine issue of material fact as to whether any and all claims against Macro were released for its alleged violation of any covenant not to compete with UFL, and whether Macro was entitled to a judgment as a matter of law declaring same. In its petition, Macro alludes to both the agreement between it and Deep South and UFL's operating agreement. Thus, the operating agreement is not "extrinsic evidence" and was properly considered by the trial court.

Next, Deep South asserts that the trial court erred in applying the language of UFL's operating agreement. Deep South argues that the language of Article 16.1 that states, "this provision shall cease to apply upon the dissolution or cessation of business of the Company" should be read to mean that a complete cessation of business, i.e. dissolution, must occur. Thus, according to Deep South, UFL's right to pursue claims against Macro were never "reserved" because the company did not *completely* cease conducting business, as it still pays bills, collects receivables, etc. We do not agree.

The agreement between Macro and Deep South specifically states that "UFL will not conduct any operations or carry on any further business, and Macro and Deep South intend to dissolve UFL." Further, it is clear that UFL has ceased conducting its ordinary and regular business operations that existed prior to the sale. It has done so in order to honor its covenant not to compete with Talen's, the purchaser of its business. Thus, we find this argument has no merit.

Finally, Deep South contends that the trial court erred by failing to apply La.Civ.Code art. 3078, which states, "[a] compromise does not affect rights

6

subsequently acquired by a party, unless those rights are expressly included in the agreement." We disagree with this contention.

The agreement between Macro and Deep South references UFL's sale to Talen's. Once UFL is sold and ceases business operations, any claims of UFL under Article 16.1 are "reserved" to Macro and Deep South. Additionally, the agreement between Macro and Deep South states "to the extent that Macro or Deep South has any such claims [arising out of or in any way connected to their membership in UFL], the same are hereby waived, released, remitted and otherwise extinguished." Thus, we interpret the agreement between Macro and Deep South to have contemplated any and all claims arising out of their membership in UFL. It is evident that UFL's claims against Macro, which would "reserve" to Deep South per UFL's operating agreement, arise out of Deep South's membership in UFL.

## CONCLUSION:

Deep South Petroleum, Inc., Charles W. Dupuis, and Charles A. Fuselier, Jr. raised three assignments of error. We find no merit in any of those assignments and uphold the trial court's grant of Macro Oil Company, Inc., Richard G. McElligott, and William H. McElligott's motion for summary judgment. Costs of this proceeding are assessed to Deep South Petroleum, Inc., Charles W. Dupuis, and Charles A. Fuselier, Jr.

**AFFIRMED.**